PAUL A. BONIN, Judge.
11James Alderdice, the appellant, retained a vendor’s lien on immovable property sold on credit to the late Thelma Tate Bickham. The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, however, instituted a quick-taking expropriation of the property against Mrs. Bickham’s heirs.[1] Relying upon Article 1, § 4, of the Louisiana Constitution, Mr. Alderdice intervened in the expropriation proceedings in accordance with Sections 11 and 149 of Title 19 of the Louisiana Revised Statutes in order to demand a trial on the issue inter alia of what amount constitutes just compensation to the owner of the property.
. The Board did not and does not oppose Mr. Alderdice’s intervention as it concedes he may have a preferential claim to the proceeds of the payment made in compensation for the expropriation, but it raised the objection that Mr. Alderdice has no right of action to seek a determination of the amount of just compensation owed to the property owners. The trial judge, while continuing to allow Mr. Alderdice’s intervention, sustained the exception of no right of action filed by the |2Board insofar as it denied him the right to seek a trial on the issue of just compensation.
On our de novo review, we hold that Article 1, § 4, of the Louisiana Constitution establishes that any party, including an intervenor like Mr. Alderdice, may demand a trial to determine the amount of just compensation owed to the owners of the property, which in this case had been subject to a vendor’s lien. Accordingly, we reverse the trial court’s judgment to the extent that it sustained the Board’s exception and remand this matter to the trial court for further proceedings consistent with our opinion.
*121 We now explain our ruling in greater detail.
I
We first summarize this matter’s facts and procedural history. On October 9, 1997, Mr. Alderdice sold to Thelma Tate Bickham a lot of land and all the improvements thereon for $34,000.00.[2] The house situated on the lot bore the municipal address of 2327 Palmyra Street, New Orleans, Louisiana. The transfer of ownership was accomplished by means of a credit sale in which Mrs. Bickham initially paid Mr. Alderdice $3,400.00 in cash at the time of the sale, and promised to pay him $328.83 per month for fifteen years. The sale was secured by a mortgage and the explicit grant of a vendor’s lien, all contained within the act of sale itself. The act of sale was subsequently recorded in the Mortgage Records for |sOrleans Parish on October 14, 1997, thus securing the vendor’s lien against third parties and Mrs. Bickham in accordance with La. Civil Code Art. 3274.[3]
The parties agree that Mrs. Bickham died in 2007, although no succession documents, save the judgment of possession, are in in the record before us.[4] The parties, likewise, assert' that the Bickham heirs each own an undivided one-third interest in the property.[5] Mr. Alderdice claims that the heirs ceased making payments on the note sometime in 2008.[6]
The Board, in connection with its efforts to develop the LSU/VA medical complex in New Orleans, began expropriation proceedings against the subject property on August 13, 2010.[7] The Board named as *122 defendants the three Bickham heirs in addition to the City of New Orleans, as holder of several tax liens. The L Board also deposited $6,555.00 as just compensation into the registry of the court for the benefit of the Bickham heirs and asked the trial court to order the Bickham heirs to satisfy the following liens and mortgages out of its deposit for just compensation: 1) the October 9, 1997 credit sale from Mr. Alderdice to Mrs. Bickham; 2) liens for code enforcement violations, as well as 2009 and 2010 property taxes owed to the City of New Orleans; and, 3) a recorded September 1998 judgment against Tesha Bickham in favor of Houston Savings Bank FSB.[8] The trial judge signed the order of expropriation on August 27, 2010.
Some, though not all, of the parties were served, with the Board’s petition. While Octavia Bickham was personally served with citation and a copy of the petition on September 7, 2010, there is no indication in the record that any type of service was made on Tesha Lewis or Allen Bickham. None of the Bickham heirs have filed any pleadings, responsive or otherwise, to the Board’s petition. And it is unclear to us whether the Bickham heirs, or any of them, would have any personal obligation to satisfy their late mother’s debt incurred in connection with the credit sale.
The City, through the City Attorney’s office, was served with citation and a copy of the petition on September 7, 2010. The City filed an ex parte motion to disburse funds and cancel liens on November 8, 2010. There is no indication that the trial judge signed the City’s requested order, and the parties contend that the [ ¿amount of just compensation initially deposited by the Board remains in the registry of the court.
Mr. Alderdice, who received informal notice of the Board’s taking, sought leave to intervene in this matter on October 20, 2011. Mr. Alderdice’s request was granted by the trial court; and he filed his petition for intervention on October 20, 2011.[9] His petition asserts that he is entitled to intervene in this matter because the subject property secured his credit sale to Mrs. Bickham, and thus is entitled to an award for the value of the property as expropriated by the Board and damages for the destruction of the house.[10]
The Board answered Mr. Alderdice’s intervention on November 14, 2011, denying specifically that he has a right to contest the value ascribed by it to the subject property. Following this answer, Mr. Al-derdice and the Board spent the next two years engaging in motion practice, conducting discovery, and setting, and extending, court-scheduled cut-off dates. The *123 Board, eventually, filed an exception of no right of action on December 30, 2013, wherein it asserted that Mr. Alderdice had no right to assert a claim for damages. The exception acknowledged Mr. Alderd-ice’s right to intervene as a secured creditor and assert an interest in the | (¡money on deposit in the trial court’s registry, yet denied his right to challenge for any purpose the sufficiency of the award.
In opposition, Mr. Alderdice invoked Article 1, § 4, of the Louisiana Constitution which provides that while “the owner” of expropriated property must be compensated to the full extent of his loss, “a party has the right to trial by jury to determine whether the compensation is just.” Mr. Alderdice argued, therefore, that this section indicates the drafters’ intent to draw a clear distinction between the rights of a party to seek a determination by trial of an expropriated property’s value and the rights of an owner of expropriated property to receive just compensation. Because he was a proper party by virtue of his intervention as a secured creditor of Mrs. Bickham, Mr. Alderdice argued that the Constitution affords him a right of action to seek a determination of just compensation.
The Board and Mr. Alderdice appeared before the trial to argue the merits of the Board’s exception. Noting that the issue before her was “whether or not James Alderdice, as an intervener, has standing to challenge the amount of just compensation issued in connection with the expropriated property in his capacity as a mortgagee,” the trial judge ruled on the Board’s exception at the close of the hearing. After correctly noting the proper standards governing the exception of no right of action, the trial judge observed that Mr. Alderdice “[ujnmistakably ... has a vested real and actual interest in the adjudication of these proceedings given his security interest in the subject property.” The trial judge also acknowledged the fact that the Bickham heirs “have not availed themselves to the instant proceedings |7nor have they asserted their right to contest the value of compensation deposited in the court’s registry.” The trial judge then granted the Board’s exception after concluding that “[ajlthough Mr. Alderdice maintains that his interest in the subject property would be materially prejudiced, because the property owners failed to challenge the amount of compensation issued, the Court finds that he is not the proper party to contest the amount of just compensation for the property in question.”
The trial judge subsequently signed a written judgment wherein she specifically dismissed with prejudice Mr. Alderdice’s claims “against the Board for damages and for additional just compensation for the expropriation” of the subject property. Mr. Alderdice then sought, and was granted, a devolutive appeal within the delays allowed by law.
II
Before we analyze Mr. Alderdice’s arguments, we first set out those general legal precepts which underlie our opinion. Because our decision is grounded solidly within the overarching framework of Louisiana expropriation law, we first discuss the constitutional and statutory provisions that both regulate the Board’s quick-taking suits and protect a property owner’s rights to just compensation. We next set out the law'governing interventions. Finally, we examine the rules governing exceptions of no right of action.
A
Expropriation is defined as the “authorized use of judicial coercion to compel the transfer of existing property rights conditioned upon the prior payment of *124 compensation.” Melvin G. Dakin and Michael R. Klein, Eminent Domain in Louisiana 3 (1970). “The power to expropriate is eo instante — it exists as long as does the government.” Board of Sup’rs of Louisiana State University v. Dixie Brewing Co., Inc., 14-0641, pp. 17-18 (La.App. 4 Cir. 11/19/14), 154 So.3d 683, 695; citing Tennessee Gas Transmission Co. v. Violet Trapping Co., 248 La. 49, 84, 176 So.2d 425, 438 (La.1965) (holding that the power to expropriate is “inherent in all government, coming into being Eo instante with the establishment of the government and continuing as long as the government endures, and does not require recognition by constitutional provision for its existence.”) Article 1, § 4, of the Louisiana Constitution, which establishes the constitutional touchstone for all Louisiana eminent domain proceedings, therefore constitutes a limitation on the authority of the state to take property. See Dakin & Klein, supra, at 3. As it existed on the date of the taking at issue, Article 1, § 4, provided in pertinent part:
(A) Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
(B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit.
[[Image here]]
(5) In every expropriation or action to take property pursuant to the provisions of this Section, a party has the right to trial by jury to |9determine whether the compensation is just, and the owner shall be compensated to the full extent of his loss. Except as otherwise provided in this Constitution, the full extent of loss shall include, but not be limited to, the appraised value of the property and all costs of relocation, inconvenience, and any other damages actually incurred by the owner because of the expropriation.
“It is undisputed that the sovereign may delegate the power of expropriation or eminent domain to administrative officers or other agencies of the sovereign and to public and private corporations.” State Through Dept. of Highways v. Ouachita Parish School Bd., 242 La. 682, 689, 138 So.2d 109, 112 (La.1962). The Legislature, accordingly, has authorized the Board to acquire property needed for public purposes by way of quick-taking procedure. See La. R.S. 19:141 et seq. Title 19’s provisions enable the Board to take property and begin work on projects quickly, protect the rights of property owners to receive just compensation for the property taken, and secure the interests of those who hold real rights in expropriated property.[11]
Title 19 first obligates the Board to initiate proceedings by filing a petition. for expropriation. See La. R.S. 19:142. The Board, therefore, assumes the procedural posture of a plaintiff in quick-taking procedures. The Board’s petition must contain “a statement of the purposes for which the property is to be expropriated, describing the property necessary therefore with a plan of the same, a description of the improvements thereon, if any, and the name of the owner if known and present in the state.” La. R.S. 19:2.1 A(2). The Board’s petition must also include, among other things, a statement of the amount of *125 money estimated to | inbe just and adequate compensation for the taking, showing any estimate of damages and of value of improvements as separate items. See La. R.S. 19:142. The Board’s petition must “conclude with a prayer that the property and/or servitude be declared taken for public purposes and, upon presentation of the petition, the court shall issue an order directing that the amount of the estimate be deposited in the registry of the court and declaring that the property described in the petition has been taken for public purposes at the time of the deposit.” La. R.S. 19:144.
Upon the Board’s deposit of the estimated amount into the registry of the court, title to the property and property rights specified in the petition vests in the Board while the right to just and adequate compensation vests “in the persons entitled thereto.” La. R.S. 19:145. The Board’s right to take possession and title in advance of final judgment “is in addition to any right or authority conferred by the laws of this state under which expropriation proceedings may be conducted, and shall not be construed as abrogating, eliminating, or modifying any such right or authority.” La. R.S. 19:158.
Upon receipt of the Board’s deposit, the clerk of court is directed to issue a notice to each defendant in the suit, “notifying him that the property described in the petition has been expropriated for public purpose.” La. R.S. 19:146. All defenses contesting the validity of the expropriation, save a request for additional compensation, are waived unless a defendant files a motion to dismiss within ten days of the service of the notice provided by La. R.S. 19:146 and serves it upon Inthe Board. See La. R.S. 19:147.[12] The Board may only be “divested of title acquired under these provisions after a finding that the property was not taken for a public use.” La. R.S. 19:160.
Even after the trial court has signed the order of expropriation, any defendant in a case which concerns the Board’s expropriation of an entire lot, block, or tract of land may apply for a trial to determine the market value of the property expropriated provided he first files an answer within the time specified that, among other things, specifies the amount claimed as just compensation. See La. 19:150.[13] A defendant-property owner who contests the Board’s award of just compensation, therefore, assumes the procedural posture of a plaintiff. The measure of compensation in such a trial “is determined as in general expropriation suits but as of the time the estimated compensation was deposited into the registry of the court.” La. R.S. 19:153.[14] In such a case, damage “to the remainder of the property is determined as of the date of the trial.” Id. If the compensation awarded exceeds the amount of the Board’s deposit, the court shall enter judgment against the Board and in favor of the persons entitled to the amount of the deficiency. See La. R.S. 19:156.
B
Interventions are an incidental action governed by La. C.C.P. art. 1091, which *126 provides that “[a] third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties.” The article restricts an intervenor’s action to one that either joins with the plaintiff “in demanding the same or similar relief against the defendant,” unites with the defendant “in resisting the plaintiffs demand,” or opposes both plaintiff and defendant. La. C.C.P. art. 1091. “An interve-nor cannot object to the form of the action, to the venue, or to any defense and infor-malities personal to the original parties.” La. C.C.P. art. 1094.[15]
C
The propriety of an intervention can be questioned by the peremptory exception of no right of action. Lions Gate Films, Inc. v. Jonesfilm, 12-1452, pp. 4-5 (La.App. 4 Cir. 3/27/13), 113 So.3d 366, 369-370. “The peremptory exception of no right of action questions whether the party against whom it is 1 ^asserted has an interest in judicially enforcing the right alleged against the exceptor.” First Bank and Trust v. Duwell, 11-0104, p. 3 (La.App. 4 Cir. 5/18/11), 70 So.3d 15, 18. See also La. C.C.P. art. 927 A(6). The Louisiana Supreme Court indicates that this exception is used to determine “whether plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the petition.” Badeaux v. Southwest Computer Bureau, Inc., 05-0612, 05-0719, p. 6 (La.3/17/06), 929 So.2d 1211, 1217, citing Turner v. Busby, 03-3444, p. 4 (La.9/9/04), 883 So.2d 412, 415. Further, the exception of no right of action “serves to question whether the plaintiff in the particular case is a member of the class of persons that has a legal interest in the subject matter of the litigation.” Id. at pp. 6-7, 929 So.2d at 1217. “Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts.” La. C.C.P. art. 681; see also Louisiana Paddlewheels v. Louisiana Riverboat Gaming Comm’n, 94-2015, pp. 4-5 (La.11/30/94), 646 So.2d 885, 888.
We review de novo a trial court judgment sustaining an exception of no right of action as a question of law and determine whether the trial judge’s ruling was correct or incorrect as a matter of law. See Hornot v. Cardenas, 06-1341, p. 12 (La.App. 4 Cir. 10/3/07), 968 So.2d 789, 798.
Ill
In this part we discuss Mr. Alderdice’s assertion that the trial judge erred when she granted the Board’s exception of no *127 right of action and effectively declared that he does not have standing to seek a determination of just | ^compensation. From our examination of the debates surrounding the drafting of Article 1, § 4, at the 1973 Constitutional Convention, we first conclude that this provision grants any proper party to an expropriation proceeding standing to request a trial to seek a determination of just compensation. We next observe that Sections 19 and 149 of Title 19 protect the security interests of mortgagees and lienholders, among others, and provides a framework for their intervention into matters such as these so that they may satisfy their secured interests from the amount of just compensation awarded. While concluding correctly that Mr. Alderdice had a right to intervene in this matter, the trial judge — in light of our constitutional conclusion — nevertheless erred when she found that Mr. Alderdice lacked standing to seek a determination of just compensation for the subject property-
A •
We first address Mr. Alderdice’s assertion that Article 1, § 4, of the Louisiana Constitution grants him standing to ask for a trial to determine the amount of just compensation for the subject property. The Board, in support of the trial judge’s ruling, relies upon the plain wording of Section 150 of Title 19, which grants “any defendant” the right to apply for a trial to determine the market value of the property expropriated. Because Mr. Al-derdice is an intervenor and not a defendant, the Board reasons, he does not have standing to apply for a trial to determine the issue of'just compensation.
Mr. Alderdice counters that the source of his standing to ask for a trial on the issue of just compensation derives not from Title 19, but rather from the Louisiana Constitution, which provides specifically that in all-expropriations, “a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss.” La. Const. Art. 1, § 4. (Emphasis added.) By drawing a distinction between parties to an expropriation suit and owners of expropriated property, Mr. Alderdice reasons, the Constitution reveals the drafter’s intent to allow any party to an expropriation suit standing to seek, at a minimum, a trial to determine just compensation. We agree.
The provisions set out in Title 19 cannot override the rights established by the Constitution.[16] It has long been held that the “Constitution is the paramount law, to which all other laws must yield, and its provisions must prevail over an act of the Legislature which is in conflict therewith.” State v. Smith, 209 La. 363, 370, 24 So.2d 617, 619 (La.1945). While we do not think that La. R.S. 19:150 is unconstitutional, we must nevertheless interpret and apply the provisions found within Title 19 in light of the dictates of our constitution.
And it is clear from our examination of the debates surrounding the language of Article 1, § 4, which occurred during the Constitutional Convention of 1973, that the drafters intended the phrase “a party has the right to trial by jury to determine | ^compensation” to be inclusive of any *128 party. We base our conclusion on the observation that the language found within Article 1, § 4 marked a change from prior law and evolved over the course of deliberations to become increasingly inclusive of more parties. It is important to note at this point that we are not studying the constitutional debates in order to discern whether Mr. Alderdice has a right to a jury trial on the issue of compensation. Rather, we discuss Article 1, § 4’s development because it illuminates a deeper drive towards an expansive use of trials — whether by jury or judge — to decide issues of just compensation.
For example, the initial committee proposal for Article 1, § 4 granted a right to trial by jury to determine just compensation solely to the owner of expropriated property: “Property shall not be taken or damaged except for a public and necessary purpose and with just compensation paid to the owner or into court for his benefit. The owner shall be compensated to the full extent of his loss and has the right to a trial by jury to determine such compensation.” Volume VI, Official Journal of the Proceedings of the Constitutional Convention of 1973 of the State of Louisiana, (39th days proceedings — August 30, 1973), at 1030. (Emphasis added.) This version of Section 4 was initially accepted by the delegates. See Id., at 1067. As noted in the delegates’ discussions, the provision on jury trials marked 'a change in the law, which had since 1948 precluded juries from deciding issues of just compensation. See Volume VII, Official Journal of the Proceedings of the Constitutional Convention of 1973 of the State of Louisiana, (46th days proceedings — September 13,1973), at 1242. Indeed, an attempt by one delegate to |17excise by way of amendment an owner’s right to a trial by jury to determine compensation — and thus retain the status quo ante — was subsequently defeated. See Volume VI, Official Journal of the Proceedings of the Constitutional Convention of 1973 of the State of Louisiana, (39th days proceedings — August 30, 1973), at 1066-1067.
On day 46 of the proceedings, Delegate Tobias- offered an amendment that significantly abbreviated Section 4 as adopted yet expanded the right to a jury' trial: “Except as otherwise provided by this constitution private property shall not be taken or damaged, except for a necessary public purpose, and unless just and adequate compensation is paid. The right to trial by jury to determine such compensation shall not be denied.” Volume VII, Official Journal of the Proceedings of the Constitutional Convention of 1973 of the State of Louisiana, (46th days proceedings — September 13, 1973), at 1233. With respect to the expanded right to a jury trial to determine compensation, Delegate Tobias observed:
‘The right to trial by jury to determine such compensation shall not be denied.’ I personally disagree with that too, because we have appellate review of facts in this state. Very true, and it wouldn’t mean that much. But let me suggest to you this, Section 4 as presently adopted says ‘the owner has a right to such compensation.’ Well, let me suggest to you this. What about the leasehold right? Presently, the leasehold right is compensated for taking. Presently it’s compensated. So therefore, there is a big opening in this section. You are in effect denying that leaseholder of his right to compensation. Is this what we want to do? Well, my language just says, the right to trial by jury shall not be ... to determine such compensation shall not be denied.
That means that each person who has an interest in the property, no matter what his interest, can continue.
11S/A at 1238.
*129 Although Delegate Tobias’ proposed wording was rejected, an additional amendment put forward by other delegates on that same day offered an additional rewrite of the section and included an even clearer expansion of the right to jury trials to determine compensation: “In all expropriations, any party shall have the right to trial by jury to determine compensation, and the owner shall be compensated to full extent of his loss.” Id. at 1240 (emphasis added). The delegates subsequently adopted this amendment, which became the source provision for the final text of Article 1, § 4 as approved by the voters. The final version of the section, as edited by the Committee on Style and Drafting, modified the wording from “any party” to “a party” in order to singularize “in accordance with conventional practice,” though no change in meaning was intended by the amendment. Volume VIII, Official Journal of the Proceedings of the Constitutional Convention of 1973 of the State of Louisiana, (113th days proceedings—January 9, 1974), at 3251-3252. See also Lee Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La. L.Rev. 1, 14 (1974) (“the final proposal, however, refers to ‘a party’, meaning any party to the proceeding ... ”). In light of the delegate’s discussions on Article 1, § 4, its provision for a right to jury trial where none existed before, and its expansion of the scope of those entitled to request such a trial, we determine that this section of the Constitution grants standing to any party to an expropriation suit to seek a trial on the issue of just compensation.
I iqB
We next observe that the trial judge concluded correctly in her reasons for judgment that Mr. Alderdice, who held a mortgage and a properly recorded vendor’s lien in the subject property, has “a vested real and actual interest in the adjudication of these proceedings given his security interest in the subject property.” Although the Board does not dispute the issue, we think it necessary to emphasize this point because Title 19 reveals a clear legislative intent to secure the interests of those who hold real rights — such as mortgages and vendor’s liens — in expropriated property.
Title 19’s definition of property encompasses both immovable property, servi-tudes, “and other rights in or to immovable property.” La. R.S. 19:1. The Civil Code provides that a mortgage is “an indivisible real right that burdens the entirety of the mortgaged property and that follows the property into whatever hands the property may pass.” La. Civil Code art. 3280. As the Supreme Court has observed, perfect ownership of a thing is not possible when that this is subject to a mortgage: “[pjerfect ownership becomes imperfect when the property is mortgaged, by alienation of that real right; but the title and possession still remain in the owner ... While mortgage does not transfer the title, nor even a dismemberment of it, it nevertheless creates a real right upon the property.” Fidelity Credit Company, Inc. v. Winkle, 251 La. 1, 19, 202 So.2d 280, 286 (1967). The security interest created by the act of mortgage “gives the mortgagee, upon failure of the obligor to perform the obligation that the mortgage secures, the right 12nto cause the property to be seized and sold in the manner provided by law and to have the proceeds applied toward the satisfaction of the obligation in preference to claims of others.” La. Civil Code art. 3279.
A properly recorded vendor’s hen “is very similar to that of a real mortgage and may be regarded as a real right.” A.N. Yiannopoulos, Louisiana Civil Law Treatise, Property § 232 (4th ed.2014). The Louisiana Civil Code grants the vendor of *130 immovable property “a privilege on the things sold for the payment of the purchase price.” Id. See also La. Civil Code art. 3249. The privilege “is a distinct right of security for the unpaid balance of the thing sold” and constitutes “a substantive accessorial right that attaches to the property sold.” Yiannopoulos, supra, at § 232. The vendor’s lien “arises by operation of law as a legal concomitant to a contract of sale and is transferable to the vendor’s successors by operation of law without contractual subrogation.” Id. The privilege may attach to any object “which is susceptible of alienation.” Id. The vendor’s lien exists between the parties without recordation as to both movables and immovable, although a privilege on immov-ables “must be recorded to affect interests of third persons.” Id. A properly recorded privilege on immovables “confer on the vendor the right to follow the thing and enable him to assert his right of preference against the property in the hands of third persons.” Id.
The lien gives an unpaid vendor “the right to demand the dissolution of sales on credit by judicial process.” Id. A vendor holding a properly recorded vendor’s lien is also.“preferred to the previously recorded mortgages of his vendees and R, their successors.” La. Civil Code art. 3251. “The purpose of the vendor’s lien is to prevent creditors of the vendee from appropriating the value of an increase in the assets of the vendee when the purchase price has not been paid and the vendee’s patrimony has not in fact increased.” Lawyers Title Ins. Corp. v. Valteau, 558 So.2d 1319, 1322 (La.App. 4th Cir.1990). Both mortgages and properly recorded vendor’s liens, therefore, fall within Title 19’s definition of property.
Because Title 19 was devised to provide a procedural mechanism by which the Board can acquire perfect ownership and possession of property needed for public use, it indicates that whenever “any property encumbered with mortgages or privileges of any kind is expropriated pursuant to this part, the property passes to the person expropriating it free and clear of all encumbrances.” La. R.S. 19.T1.[17] Given that mortgages and properly recorded vendor’s liens nevertheless encompass real rights, Title 19 also provides that “[a]ny amount awarded pursuant to the provisions of this part shall be paid into the court by which the expropriation is made and distributed to the mortgage and privileged creditors according to their priority.” Id.
Title 19, therefore, affords “any party in interest” the right' to petition the trial court to “order that the money deposited, or any part thereof, be paid forthwith to the person entitled thereto for or on account of the just and adequate compensation to be awarded in the proceedings.” La. R.S. 19:149. This same 122section notes clearly that the “court may make such orders as shall be just and equitable to direct the payment of taxes, encumbrances and other charges out of the money deposited.” La. R.S. 19:149. The holder of a mortgage or properly recorded vendor’s lien, therefore,.clearly has standing to intervene and petition the trial court as a party for a disbursement of that portion of the amount of just compensation attributable to the value of the mortgage or lien. See Dakin & Klein, supra, at 309 (“Gener *131 ally, anyone claiming a real right in the subject matter should be allowed to intervene .... It would seem that a mortgagee or any lienholder could intervene and assert any claims to the funds deposited by the condemnor. This would appear to be implicit in sections 48:457 and 19:11.”)
Mr. Alderdice’s intervention into the Board’s expropriation proceeding against the Bickhams is, therefore, entirely justified by Title 19. Because Sections 11 and 149 of Title 19 empower Mr. Alderdice to intervene in this matter and assert his rights as both mortgagee and lienholder against the amount deposited by the Board into the registry of the court as just compensation, we conclude that he is a party to this proceeding. Because he is a party to this proceeding, we conclude that Mr. Alderdice has standing by virtue of Article 1, § 4, of the Constitution to seek, by way of judge or jury trial, a determination— though not an award — on the issue of just compensation.
IY
Before closing, we further note that the Board, in support of the trial judge’s ruling, relies upon our prior Alderdice opinion wherein we stated: “Similarly, as l^the only party to whom compensation is owed in an expropriation proceeding is the property owner, Alderdice has no right of action for damages against the Board.” 12-0148, p. 8, 107 So.3d at 12. We think the Board’s reliance on this language is untenable for several reasons.
We observe-first that in our prior opinion we were only called upon to decide whether the trial judge was correct in concluding that Mr. Alderdice lacked standing to annul the expropriation on constitutional grounds by virtue of the Board’s failure to provide him with notice of the quick-taking. In affirming the trial judge, we concluded that Mr. Alderdice “has no right of action to set aside the judgment of expropriation.” Id. Any other observations concerning matters not at issue in that proceeding, therefore, were purely dicta and not binding upon subsequent panels of this Court.
We also note that Mr. Alderdice is no longer asking for an award of damages from the Board. Rather, he seeks a trial to merely determine the amount of just compensation for the property taken by the Board. At this juncture, therefore, Mr. Alderdice is not asking for an award of anything save that which is granted to him under Sections 11 and 149 of Title 19. The' dicta from our prior Alderdice opinion on a mortgagee or lienholder’s right to seek damages from the Board is, therefore, in-apposite to a resolution of the present controversy. We conclude, therefore, that the trial judge erred when she granted the Board’s exception of no right of action.
|mDECREE
We reverse the trial court’s judgment that granted the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College’s exception of no right of action insofar as it struck Mr. Alderdice’s request for a trial to seek a determination on the issue of just compensation. We remand this matter to the trial court for further proceedings in accord with our opinion.
REVERSED AND REMANDED.

. Her heirs are identified as Allen Bickham, Octavia Bickham, and Tesha Bickham Lewis.

. Although she was married at the time of the sale, the Act of Credit Sale indicates that Mrs. Bickham purchased the property with her separate and paraphernal funds.

. Markings on the copy of the act of sale in the record indicate that it was also filed with the Recorder of Conveyances and the Notarial Archives for Orleans Parish.

. The judgment of possession indicates that Mrs. Bickham’s succession was filed in the 22nd Judicial District Court for the Parish of Washington. The judgment was subsequently recorded with the Register of Conveyances for the Parish of Orleans on October 9, 2007.

. The Board's Petition for Expropriation, while not referencing recorded succession documents, indicates that each of the Bick-ham heirs, see n. 1, ante, owned an undivided one-third interest in the property at the time of the expropriation. We note, however, that the July -31, 2007 judgment of possession in the record is strangely silent on this point. Specifically, the judgment references Oless Bickham's request to be recognized as Mrs. Bickham's surviving spouse, as well as Tesha Lewis, Allen Bickham, and Octavia Bickham’s requests to be recognized as Mrs. Bickham's sole heirs. The judgment, accordingly, recognizes Oless Bickham as Mrs. Bickham’s surviving spouse and places him into possession of a one-half interest in his own right of all community property and grants him a usu-fruct, in accordance with La. Civil Code art. 890, over Mrs. Bickham's one-half interest in the community property. While the judgment describes the subject property and estimates its value, it nevertheless fails inexplicably to either act on Tesha Lewis, Allen Bickham, and Octavia Bickham's requests to be recognized as heirs or place them into possession of the property at issue in this case. While it may well be that this omission was recognized and remedied by an amended judgment of possession, such judgment is not in the record before us.

. Mr. Alderdice brought suit against the Bick-ham heirs on the defaulted note in 2011. See Alderdice v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 12-0148, p. 2 (La.App. 4 Cir. 7/25/12), 107 So.3d 7, 9 n. 1. He contends that the suit is still pending.

. The Board's petition indicates that it is filed in accordance with Article 1, Section 4 of the Louisiana Constitution and the expropriation provisions found in Title 19 of the Louisiana Revised Statutes. Title 19, Sections 141 to 201, specifically grant the Board quick taking authority.

. Although the City has not appeared before us in connection with Mr. Alderdice's appeal, the Board and Mr. Alderdice concur that the amount on deposit with the registry of the court will not satisfy the City’s liens on the subject property.

. Mr. Alderdice’s intervention in this matter was preceded by a February 26, 2011, direct action against the Board, the City, and the Bickham heirs in which he sought to annul the expropriation judgment. In his petition, Mr. Alderdice argued that the judgment of expropriation should be set aside because he never received notice of the expropriation. The Board responded with an exception of no right of action, which was granted by the trial court. On appeal, we affirmed the trial court’s judgment, concluding that Mr. Alderd-ice has no right to set aside the judgment of expropriation because he was not the owner of the subject property at the time of the expropriation. See Alderdice, 12-0148, p. 8, 107 So.3d at 12.

.The Board, the City, the State of Louisiana, through the Attorney General, and Octavia Bickham were served with citation and copies of the petition. Allen Bickham was served through a curator ad hoc.

. Title 19, likewise, recognizes and secures the interests of the holders of real rights in expropriated property. We forego discussing this procedural mechanism until Part III-B, post.

. The Legislature amended La. R.S. 19:147 in 2014 to extend the deadline for filing the motion to dismiss from ten to twenty days. The Legislature provided that this amendment was to have prospective application only.

. The Legislature amended La. R.S. 19:150 in 2014 to establish a time limitation for the request of a jury trial to determine just compensation. The Legislature provided that this amendment was to have prospective application only.

.La. R.S. 19:151 sets out the requirements for determining just compensation when only part of a lot, block, or tract of land is expropriated.

. In an ordinary' intervention, the intervenor takes the proceedings as he finds them; he cannot change the issue between the parties, and can raise no new ones. See Lions Gate Films, Inc. v. Jonesfilm, 12-1452, p. 6 (La.App. 4 Cir. 3/27/13), 113 So.3d 366, 370. The reason why an ordinary intervenor's rights are so limited is because he always has his own remedy by a separate action to inject new issues. See Willis v. City of New Orleans, 14-0098, p. 4 (La.App. 4 Cir. 6/18/14), 143 So.3d 1232, 1235. We do not think that this principle is applicable to Mr. Alderdice’s intervention. As we explain in Part III-A, post, Mr. Alderdice’s standing to seek a determination of just compensation by way of trial is guaranteed by Article 1, § 4, of the Constitution. We also observe that, unlike the ordinary intervenor, the holder of a mortgage or privilege on expropriated property cannot institute a separate action and assert a claim to the amount of just compensation deposited or awarded in an expropriation suit. A mortgagee or lienholder who wishes to have their interests satisfied out of a deposit or subsequent award of just compensation must intervene pursuant to the dictates of Title 19 in order to secure the value of their real rights. See Part III-B, post.

. We note that the provisions of La. R.S. 19:141 et seq., as they existed at the time of the present taking were enacted in 1958, thus predating the effective date of our present constitution by sixteen years. Even if the provisions of the present constitution were mere statutes, instead of constitutional provisions, we would be compelled to give preference to their contents as more recent reflections of legislative will. See Pumphrey v. City of New Orleans, 05-0979, p. 12 (La.4/4/06); 925 So.2d 1202, 1210.

. Although Section 11 is located within Title 19’s general expropriation laws, it is incorporated by reference into that portion of Title 19 which regulates the Board’s quick-taking suits. See La. R.S. 19:154, which indicates that except as otherwise provided, the Board's expropriation suits are to be “tried in accordance with the provisions of the general expropriation laws.”