DENNIS R. BAGNERIS, SR., Judge.
liOn June 25, 2013, plaintiff, Edouard R. Quatrevaux, acting in his official capacity as the Inspector General for the City of New Orleans (hereinafter referred to as “OIG”), served an administrative subpoena duces tecum on the defendant, the Orleans Parish School Board (“OPSB”) seeking the production of various documents from the OPSB for years ended 06/30/11 and 06/30/12. The OPSB filed a motion to quash the subpoena on July 15, 2013. After a hearing, the district court denied the OPSB’s motion to quash subpoena and found that (1) the OPSB receives local tax funds through the City of New Orleans, thereby bringing it within the investigatory jurisdiction of the OIG; (2) the OPSB is a quasi-public agency for the purpose of La. R.S. 33:9613; and (3) that the subpoena was issued in accordance with Louisiana law. The OPSB now appeals. After reviewing the applicable law, we hereby reverse the judgment of the district court and find that the OIG did not have legal authority to issue an administrative subpoena duces tecum on the OPSB and thus, the administrative subpoena duces tecum is quashed.
FACTS
In 1995, the OIG was authorized by a vote of the citizens of New Orleans, established in the Home Rule Charter in Section 9-401, to investigate fraud, waste, | ¡¡.and abuse in New Orleans City government. Specifically, the Home Rule Charter in Section 9-401 states, in pertinent part:
Section ÍM01. Office of Inspector General.
(1)The Council shall by ordinance create an Office of Inspector General (OIG) and otherwise provide with respect thereto.
(2) The OIG shall provide for a full-time program of investigation, audit, inspections, and performance review to provide increased accountability and oversight of entities of city government or entities receiving funds through the city, and to assist in improving agency operations and deterring and identifying, fraud, waste, abuse, and illegal acts. The OIG is specifically authorized to conduct audits of City entities. The OIG shall also provide for an Independent Police Monitor Division, charged with monitoring the operations of the New Orleans Police Department, particularly in the areas of civilian and internally-generated complaints, internal investigations, discipline, significant uses of force, and in custody deaths.
In 2006, the ordinance creating the OIG was set forth in Article XIII, Section 2-1120 of the New Orleans City Code. The Ordinance sets forth the OIG’s powers and limits the authority of the OIG to matters involving city government. Specifically, the Ordinance states, in pertinent part:
(10) Authority. The office of inspector general is authorized to engage in the following specific functions:
(a) Audit, evaluate, investigate, and inspect the activities, records, and individuals with contracts, subcontracts, procurements, grants, agreements, and other programmatic and financial arrangements undertaken by city government and any other function, activity, process, or operation conducted by city government.
*614 (b) Audit the efficiency and effectiveness of city government operations and functions and conduct reviews of city government’s performance measurement system.
|s(c) Review the reliability and validity of the information provided by city government performance measures and standards.
(d) Initiate such investigations, audits, inspections, and performance reviews of city government as the Inspector General deems appropriate.
(e) Receive complaints of fraud, waste, abuse, inefficiency, and ineffectiveness from any source and investigate those complaints that the Inspector General deems credible.
(f) Engage in prevention activities, including, but not limited to, the prevention of fraud, waste, abuse, and illegal acts; review of legislation; review of rules, regulations, policies, procedures, and transactions; and the supplying, providing, and conducting of programs for training, education, certification and licensing.
(g) Conduct joint investigations and projects with other oversight or law enforcement agencies, including, but not limited to, the district attorney, attorney general, and the United States Attorney.
(h) Issue reports and recommend remedial actions to be taken by the city council, the office of the mayor, or municipal departments or agency heads to overcome or correct operating or maintenance deficiencies and inefficiencies identified by the Office of inspector General.
(i) Issue public reports as set forth in subsections (8) and (9).
(j) Monitor implementation of recommendations made by the Office of Inspector General and other audit, investigative, and law enforcement agencies.
(k) Establish policies and procedures to guide functions and processes conducted by the Office of Inspector General.
(l) Require reports from the office of the mayor, city council, or city departments, agencies, boards, commissions, or public benefit corporations regarding any matter within the jurisdiction of the Office of Inspector General. |4(m) File a complaint with the ethics review board or state board of ethics upon detecting a potential violation of any state ethics law or city ethics ordinance or code.
(n) Attend all city meetings relating to the procurement of goods or services by the city, including meetings involving third-party transactions.
(o) Assist any city department, agency, board, commission, public benefit corporation, the office of the mayor, the city council, any city council member, or the governing body of any agency, board, commission, or public benefit corporation, upon request, with implementation of any suggested legislation or legislative policy. In such an event, the Inspector General may assign personnel to conduct, supervise, or coordinate such activity.
(p) Do all things necessary to carry out the functions and duties set forth in this section, including promulgate rules and regulations regarding the implementation of responsibilities, duties and powers of the Office of Inspector General.
In 2008, La. R.S. 33:9611 et seq. was enacted which enhanced the ability of the OIG to investigate certain entities not included or specified in Section 9-401 of the *615 Home Rule Charter, and the ability to issue administrative subpoenas. The legislation when enacted applied solely to the New Orleans OIG, which was at that time the only existing local office of inspector general in Louisiana.[1] La. R.S. 38:9618 specifically states, in pertinent part:
A.(4)(a) In the performance of its duties, a local office of inspector general in the city of New Orleans or parish of Jefferson may issue an administrative subpoena duces tecum to require the production of books, records, documents, or other evidence deemed relevant or material to an investigation, audit, or inspection. The subpoena duces tecum shall be issued only in furtherance \gof the authority provided by local ordinance and by Subsections D and E of this Section and shall comply with all applicable constitutionally established rights and processes. (Emphasis added)
D. (1) A local ethics entity, ethics review board, or office of inspector general shall have the authority to examine, review, audit, inspect, and investigate the records, books, reports, documents, papers, correspondence, accounts, audits, inspections, reviews, recommendations, plans, films, tapes, pictures, computer hard drives, software data, hardware data, e-mails, instant messages, text messages, and any other data and material relevant to any matter under audit, investigation, inspection, or performance review of all entities of the local governmental subdivision or entities receiving funds through or for the benefit of the local governmental subdivision. (Emphasis added)
(2) For the purposes of this Section, these entities shall include but not be limited to every local governmental subdivision officer, employee, elected official, department, agency, board, commission, public benefit corporation, quasi-public agency or body, contractor, subcontractor, licensee of the local governmental subdivision, and every applicant for certification of eligibility for a municipal contract or program.
(3) These entities shall also include all local governmental subdivision governing authorities, all districts, boards, and commissions created by local governmental subdivision governing authorities either independently or in conjunction with other units of government, and all independently elected parish public officials whose offices receive funds from the municipality.
E. .For.the purposes of this Section, a quasi-public agency or body shall be defined as:
(1) An organization, either not-for-profit or for profit, that is a component unit of local government established to perform a public purpose, and created by the state of Louisiana or any political subdivision or agency thereof or any special district or authority operating within the municipality.
16(2)An organization, either not-for-profit or for profit, that is a component unit of a local governmental subdivision reporting entity, as defined under generally accepted accounting principles.
(3) An organization, either not-for-profit or for profit, created to perform a public purpose and having one or more of the following characteristics:
(a) The governing body is elected by the general public.
*616 (b) A majority of the governing body is appointed by or authorized to be appointed by a governmental entity or individual governmental official as a part of their official duties.
(c) The entity is the recipient of proceeds of an ad valorem tax or general sales tax levied specifically for its operations.
(d) The entity is able to directly issue debt, the interest on which is exempt from federal taxation.
(e) The entity can be dissolved unilaterally by a governmental entity and its net assets assumed without compensation by that governmental entity.
(4) Any not-for-profit organization operating within .the municipality which receives or expends in excess of twenty-five thousand dollars in local assistance in any fiscal year. Assistance includes grants, loans, awards, transfer of property, and direct appropriations of local public funds.
(5) Any organization, either not-for-profit or for profit, operating within the local governmental subdivision which is subject to the open meetings law and derives a |7portion of its income from payments received from any local governmental subdivision agency or body.
In June 2013, the OIG served upon OPSB an administrative subpoena duces tecum seeking the production of various documents from OPSB for years ended 06/30/11 and 06/30/12. Specifically, the subpoena sought the following:
1.Fixed Assets (Property & Equipment):
a) Schedule of fixed assets for years ended 06/30/11 and 06/30/12 showing current year additions and disposals, acquisition date, purchase price, depreciation expense for current year and accumulated depreciation
b) Detail of repairs and maintenance expenses for the years ended 6/30/11 and 6/30/12.
2. Original and amended budgets for years ended 6/30/11 and 6/30/12.
3. Payroll journals for years ended 6/30/11 and 6/30/12.
4. Detail of overtime expenses for years ended 6/30/11 and 6/30/12.
5. List of employees for years ended 6/30/11 and 6/30/12.
6. Vendor listing for years ending 6/30/11 and 6/30/12.
7. Check register for years ended 6/30/11 and 6/30/12.
8. Board Members as of 6/30/11 and 6/30/12.
9. Trial Balance for years ended 6/30/11 and 6/30/12 (in Excel if possible).
10. Chart of accounts.
On July' 15, 2013, the OPSB filed a motion to quash the administrative subpoena duces tecum on the basis that the OIG did not have authority to issue the subpoena pursuant to Section 9-401 of the Home Rule Charter of the City of New Orleans, the City Ordinance 2-1120, and La. R.S. 33:9613; thus, the authority asserted by the OIG in this case violates the protections conferred upon the OPSB by the Louisiana Constitution. In support of its motion to quash, the OPSB argues that it is not a quasi-public body as envisioned by' La. R.S. 33:9613 but rather an independent political subdivision of the State of Louisiana. OPSB argues that | sal though the Director of Finance for the City of New Orleans collects tax money due to the OPSB, only 2% of the money collected (the collection fee) goes to the general fund of *617 the City of New Orleans. In support of its argument that the City of New Orleans has no discretion in the collection and distribution of taxes on behalf of and for the benefit of the OPSB, the OPSB cites to Section 13(C) of the Second Article VIII of the Louisianan Constitution stating that “[t]he tax shall be collected in the manner, under the conditions, and with the interest and penalties prescribed by law for City taxes. The money thus collected shall be paid daily to the Orleans Parish School Board.” Further, OPSB argues that the City of New Orleans does not appropriate money to the OPSB nor does it pay the OPSB for services using City of New Orleans’ money via Cooperative Endeavor Agreements, grants, contracts, or otherwise. Thus, OPSB alleges that the administrative subpoena duces tecum issued is an impermissible and unconstitutional exercise of power.
In response, the OIG alleged that it was the “express intention of the legislation to provide for oversight of entities that were not within the reach of the New Orleans Home Rule Charter, but that received funds through the City of New Orleans as the tax collector for the Parish.” The OIG argues that “La. R.S. 33:9613 must be read so that ‘entities receiving funds through or for the benefit of the local governmental subdivision’ includes any entities which receive funds from Orleans Parish through the City of New Orleans as the tax collector.” Further, OIG argues that the OPSB is a quasi-public agency as defined by La. R.S. 33:9613(E)(3) because the members of the board are elected by the voters of Orleans Parish in a general election, the OPSB is the recipient of an ad valorem tax levied specifically for its operations per La. Const. Art. VIII, Section 13(C), and the OPSB issues debt |9directly, the interest on which is exempt from federal taxation. Although the OIG agrees with OPSB that neither the City Charter nor the City Code can give the OIG the ability to provide oversight for the OPSB, the Louisiana Legislature enacted additional laws at the state level that give the OIG the ability to provide oversight for entities receiving funds from the parish that are collected by, and come through, the City of New Orleans.
Following a hearing, the trial court denied the OPSB’s motion to quash subpoena. The OPSB now appeals this final judgment. The OPSB assigns the following assignment of errors: (1) the district court erred in holding that the OIG’s administrative subpoena duces tecum was authorized by local ordinance; (2) the district court erred in holding that it receives funds through the City of New Orleans; (3) the district court erred in holding that it is a quasi-public agency; and (4) that the district court erred in failing to construe La. R.S. 33:9613 such that it would be constitutional.
DISCUSSION
Questions of law are reviewed under a de novo standard “without deference to the legal conclusions of the courts below.” Durio v. Horace Mann Ins. Co., 11-0084, p. 14 (La.10/25/11), 74 So.3d 1159, 1168. The standard of review for an appellate court addressing questions of law is simply whether the court’s interpretive decision is legally correct. 727 Toulouse, L.L.C. v. Bistro at the Maison De Ville, L.L.C., 12-1014, p. 8 (La.App. 4 Cir. 8/21/13), 122 So.3d 1152, 1157 (citations omitted).
The first issue to address on appeal is whether the district court erred in holding that the OIG’s administrative subpoena duces tecum was authorized by local ordinance. La. R.S. 33:9613 specifically states, in pertinent part:
lioA.(4)(a) In the performance of its duties, a local office of inspector general *618 in the city of New Orleans or parish of Jefferson may issue an administrative subpoena duces tecum to require the production of books, records, documents, or other evidence deemed relevant or material to an investigation, audit, or inspection. The subpoena duces tecum shall be issued only in furtherance of the authority provided by local ordinance and by Subsections D and E of this Section and shall comply with all applicable constitutionally established rights and processes. (Emphasis added)
After reviewing the ordinance set forth in Article XIII, Section 2-1120 of the City Code, we find the OIG’s enumerated powers are in fact limited to matters involving city government. A parish school board is a political subdivision of the State of Louisiana. La. Const. art. 6, 44. The Attorney General, in Opinion Number 10-0165 of March 2, 2011, addressed the issue of whether, and to what extent, a home charter [in the Parish of Jefferson] can allow for the creation of an OIG with investigative powers that would include the power to investigate independent entities such as the School Board. Although Louisiana Attorney General Opinions are merely advisory and not binding, the courts of this State have recognized their persuasive authority and we find it provides guidance in this matter, particularly when no cases on point exist. Concrete Busters of Louisiana, Inc. v. Board of Com’rs of the Port of New Orleans, 10-1172, p. 6 (La.App. 4 Cir. 2/2/11), 69 So.3d 484, 487-488.
The Attorney General stated that the home charter would be subject to scrutiny as to whether it “would be in conflict with the status of these entities as independent Constitutional offices and, whether in light of this status, the Constitution places any limitations on the reach of any such charter amendment(s).” Specifically, the Attorney General Opinion, No. 10-0165, 2011 WL 1455960, March 2, 2011, page 3 states, in pertinent part:
|nThe Louisiana Constitution states that ‘no home rule charter or plan of government shall contain any provision affecting a school board or the offices of district attorney, sheriff, assessor, clerk of a district court, or coroner which is inconsistent with the constitution or law.’ La. Const. Art. VI, Sec. 5(G) (emphasis in original). Citing this provision, among other things, the Louisiana Supreme Court has held that an independent office, such as a district attorney, assessor, clerk of court, school board or sheriff, “exercises a portion of the sovereign power of the state within the district of his office.... His office, duties, and powers are governed by the constitution and the legislature, and are not subject to local control.... His office, therefore, is an office of the state, not local government... ,”[2] Thus, as offices established by the Constitution and legislation, the operations and independent discretion of the School Board, Sheriff, Clerk of Court, Coroner, Assessor, and District Attorney are beyond the general control of the Charter, which is the blueprint for parish governance. As a consequence, the powers granted to a parish OIG under La. R.S. 33:9613, as well as any charter provisions adopted pursuant thereto, may not infringe upon the constitutionally-protected independence of these entities.
We find nothing in the ordinance set forth in Article XIII, Section 2-1120 of the City Code that authorizes the OIG to serve an administrative subpoena duces tecum on the OPSB; rather, the OIG’s enumerated powers are in fact limited to matters involving city government. Because the *619 OPSB is not a part of city government and because the local ordinance creating the OIG does not grant upon it the authority ■to audit the OPSB,. an independent political subdivision of the State of Louisiana, we find the district court erred in holding that the OIG’s administrative subpoena duces tecúm was authorized by local ordinance.
The second issue to address is whether the OPSB receives money through the City. As stated in La. R.S. 33:9613(D)(1):
A local ethics entity, ethics review board, or office of inspector general shall have the authority to ... audit, all 112entities of the local governmental subdivision or entities receiving funds through or for the benefit of the local governmental subdivision.
All parties agree that the Director of Finance collects OPSB taxes, which are paid daily to the OPSB save a 2% collection fee by the City of New Orleans. The OIG contends that because the City is a tax collector, and even though it charges a fee for such collection, the requirement that the OPSB receives money through the City is satisfied. The OPSB argues that the taxes are collected on behalf of the OPSB solely, and the money in question never becomes City money as it never goes into the City’s General Fund. Thus, even though the OPSB tax is collected by the Director of Finance, the City is not the beneficiary of such taxes.
Again, after reading the Louisiana Attorney General’s opinion as well as the Louisiana State Constitution, we agree with the OPSB that the Louisiana Constitution protects the school board’s independence from the exercise of power by the OIG. As stated by the Attorney General Opinion, No. 10-0165, 2011 WL 1455960, March 2, 2011, page 4:
It is therefore the opinion of this office that to the extent the OIG is granted investigative authority over the independent offices ...', this authority would be limited by the separation of powers doctrine, the Constitutionally protected independence of these entities, and the statutory language of La. R.S. 3S:9613(D)(1) to allow for the OIG to exercise these powers only to the extent necessary to ensure that funds and assets provided by the parish to these entities that are restricted or dedicated for particular purposes through legislation or cooperative agreement were used only in accordance with the restriction or dedication or that there is an accurate accounting of the funds collected and distributed by an independent office that the parish may have some claim to....
The OIG agrees that the only portion of the tax collected that goes into the General Fund of the City of New Orleans is 2% charged by the City to the OPSB. The OIG |i3has every right to audit the City concerning what it does with or for that 2% charged by the City to the OPSB because that money becomes City money once it is deposited into the General Fund. However, the remaining 98% of the money is never deposited into the City’s general fund but rather is paid daily to the OPSB.
We also find merit to the OPSB’s argument that because La. R.S. 33:9613 also applies to Jefferson Parish, which does not collect taxes on behalf of the Jefferson Parish School Board, through can only refer to money of the local government subdivision which is transferred to the entity receiving the subpoena via appropriation, grant, loan, contract or cooperative endeavor agreement in Jefferson Parish. To interpret the statute as suggested by the OIG, and accepted by the trial court, would amount to an inconsistent application of the statute and would provide the New Orleans OIG with substantially more *620 power than that of the OIG in Jefferson Parish. Accordingly, we find that the district court erred in holding that the OPSB receives funds through the City of New Orleans. In light of this conclusion, we pretermit any discussion of OPSB’s remaining assignments of error.
In conclusion, we find that the district court erred in failing to quash the OIG administrative subpoena duces tecum. The Louisiana Constitution establishes that the OPSB is an independent political subdivision of the State of Louisiana. The issuance of the subpoena is not authorized by the New Orleans City Code 2-1120 nor do we find that the OPSB receives money through or for the benefit of the local government subdivision under La. R.S. 33:9613D(1). Accordingly, we reverse the judgment of the district court and hereby quash the administrative subpoena duces tecum.
REVERSED.
LOB RANO J., dissents.

. In 2011, La. R.S. 33:9611 was amended to change the application of the statutes to "the city of New Orleans and the parishes of East Baton Rouge and Jefferson.” Act 20 of the 2011 First Extraordinary Session.

. Diaz v. Allstate Insurance, Co., 433 So.2d 699, 701 (La. 1983) (internal citations omitted)