2016-0566 (La.App. 4 Cir. 12/14/16)
**CONSTRUCTION DIVA, L.L.C.**

v.

**NEW ORLEANS AVIATION BOARD, et al.**

**NO. 2016–CA–0566**

Court of Appeal of Louisiana,
Fourth Circuit.

DECEMBER 14, 2016

Albert J. Nicaud, Jeffrey M. Siemssen, NICAUD & SUNSERI, LLC, 3000 18th Street, Metairie, LA 70002, COUNSEL FOR PLAINTIFF/APPELLANT, CONSTRUCTION DIVA, L.L.C.

Patricia S. LeBlanc, Michael L. Fantaci, Jacob G. Powell, LEBLANC FANTACI VILLIO, LLC, 3421 North Causeway Boulevard, Suite, 201 Metairie, LA 70002, COUNSEL FOR DEFENDANT/APPELLEE, CITY OF NEW ORLEANS, BY AND THROUGH THE NEW ORLEANS AVIATION BOARD

(Court composed of Judge Terri F. Love, Judge Paul A. Bonin, Judge Sandra Cabrina Jenkins)

PAUL A. BONIN, JUDGE

Construction Diva, L.L.C., responded to an Invitation to Bid on a publicly bid contract, issued by the City of New Orleans on behalf of the New Orleans Aviation Board, to provide landscaping maintenance services for properties owned by the Aviation Board.[1] The contract called for, among other things, forty percent participation by certified disadvantaged business entities. Although it had been certified by the City as a disadvantaged business entity, and had made the numerically lowest bid for the landscaping contract, Construction Diva's bid was rejected because it was

---

1. For purposes of brevity, and unless noted otherwise, we refer for the remainder of this Opinion to both defendants jointly as the "City."

not certified as a disadvantaged business in the field of landscaping, but rather in residential/industrial construction and renovation. Construction Diva, to no avail, protested the City's rejection of its bid. It then filed suit against the City, alleging that it improperly denied its bid in violation of the Louisiana Public Bid Law. *See* La. R.S. 38:2212, *et seq.* Construction Diva, accordingly, asked the trial court to either enjoin the City from awarding the contract to any entity other than it, or issue a writ of mandamus compelling the ⌊₂City to award it the contract. The trial court denied Construction Diva's request for both a preliminary injunction and a writ of mandamus.

 Construction Diva appealed the judgment denying its request for a preliminary injunction, which appeal is specially authorized by law. *See* La. C.C.P. arts. 1841, 2083 C, 3612 B. The denial of a request for a writ of mandamus is likewise an appealable judgment. *See, e.g., Clothesline Laundromat, Inc. v. City of New Orleans,* 11–1578 (La. App. 4 Cir. 8/1/12), 98 So. 3d 901. Having reviewed the record and the applicable law, we cannot say that the trial judge abused her discretion in denying Construction Diva's request for either a preliminary injunction or a writ of mandamus. We explain our decision below.

## I

We first discuss this matter's factual and procedural history.

On August 7, 2015, the City published an invitation to bid upon a contract entitled "Airport Property Landscaping Annual Maintenance," in which the winning bidder would provide landscaping services to maintain specified "landscape areas throughout the airport site on a full time basis, as well as installation of supplemental plant materials." Significantly, the bidding documents mandate a forty percent participation in the contract by a certified State/Local Disadvantaged Business Enterprise.[2]

⌊₃Construction Diva, which the City certified as a disadvantaged business on April 25, 2014, submitted a bid and averred that it satisfied the project's forty percent disadvantaged business requirement. The City received several other bids, all of which it opened on October 20, 2015. The lowest numerical bid was submitted by Construction Diva, while the next lowest bid was submitted by Little Computer Solutions, L.L.C. However, on November 16, 2015, the City, by way of correspondence, informed Construction Diva that its bid was non-responsive: "Bidder failed to satisfy the SLDBE requirement. Construction Diva, LLC is not a certified SLDBE in the area of landscaping. We are unable to count Construction Diva, LLC's participation toward the SLDBE goal. As such, the attainment is 0% and does not comply with the SLDBE requirement for the project." The City accordingly, awarded the contract to Little Computer Solutions. Construction Diva timely filed a bid protest, which the City denied.

Shortly thereafter, Construction Diva filed suit against the City and the Aviation Board. It alleged that the City improperly denied its bid because the bid documents do not mandate that the responsive bidder have landscaping specified as a provided service on its disadvantaged business application. Construction Diva, accordingly, asserted that the City's rejection of its bid

---

2. *See* La. R.S. 1:61 ("Whenever the context so requires, the term "disadvantaged business enterprise" as used in the Louisiana Revised Statutes of 1950 and any rules and regulations promulgated in accordance with the Administrative Procedure Act shall mean a disadvantaged business enterprise certified under the Unified Certification Program for Disadvantaged Business Enterprises.").

conflicts with the Louisiana Public Bid Law. *See* La. R.S. 38:2212, *et seq.* Contending that the City's actions violated a prohibitory law, Construction Diva asked the trial court to issue a temporary restraining order prohibiting the City from awarding the contract at issue to any bidder other than Construction Diva, or to commence work under the ₄contract pending the results of the subsequent hearing on its request for a preliminary injunction. Construction Diva alternatively prayed for the issuance of a writ of mandamus ordering the City to award the landscaping contract to Construction Diva. The trial judge granted the temporary restraining order and set a show-cause hearing on Construction Diva's request for a preliminary injunction.

The City subsequently filed an opposition to Construction Diva's petition. Little Computer Solutions filed a petition of intervention in which it adopted the positions set out by the City. The parties appeared before the trial court on March 8, 2016, to argue the merits of Construction Diva's request for injunctive relief. After receiving exhibits and listening to the parties' respective arguments, the trial court at the close of the hearing orally denied Construction Diva's requests for both a preliminary injunction and a writ of mandamus. The trial judge signed a written judgment to this effect on March 14, 2016. Construction Diva timely sought appellate review, and is now before us devolutively.[3]

## II

We turn now to analyze Construction Diva's arguments on appeal. Specifically, Construction Diva asks this Court to reverse the trial court's judgment, thereby compelling the City to award it the landscaping contract. In ₅support, it argues that the trial court erred when it failed to conclude that the City acted arbitrarily and capriciously when it rejected its bid because it did not have landscaping listed on its disadvantaged business certification. The City's actions were arbitrary and capricious, Construction Diva claims, because its insistence that Construction Diva be certified in landscaping effected an impermissible deviation from the bid documents and the public bid law. Having reviewed the record, however, we conclude that the trial judge did not abuse her discretion in denying Construction Diva's request for a preliminary injunction because it failed to prove that it will suffer irreparable harm in the absence of injunctive relief given that it failed to establish that the City impermissibly deviated from the bid documents or violated the dictates of the public bid law. We also conclude that the trial court did not abuse her discretion in denying the request for a writ of mandamus.

## A

We first analyze Construction Diva's arguments regarding the trial court's refusal to grant its request for a preliminary injunction.

**3.** On March 15, 2016, Construction Diva filed a notice of intent to seek supervisory writs. The trial judge gave Construction Diva until April 8, 2016, to file its writ application with this Court. On March 21, 2016, however, Construction Diva filed a motion for suspensive appeal. The trial judge granted this motion and set the appeal bond at $175,000. Construction Diva, ultimately, chose not to file the bond or pursue its suspensive appeal. It, in-

stead, elected to pursue its application for supervisory writs. On April 27, 2016, this Court granted Construction Diva's writ application "for the sole purpose of remanding the matter to the trial court to consider the notice of intent as a motion for appeal and to promptly enter an order of appeal." *Construction Diva, L.L.C. v. New Orleans Aviation Board and the City of New Orleans,* 16–375 (La. App. 4 Cir. 4/27/16), unpub.

**1**

■ "A preliminary injunction is an interlocutory procedural device designed to preserve the status quo as it exists between the parties, pending trial on the merits." *Smith v. Brumfield*, 13–1171, p. 5 (La.App. 4 Cir. 1/15/14), 133 So.3d 70, 74. Injunctive relief is an equitable remedy, which is ordinarily only available when a party has no adequate legal remedy. *Cf. West v. Town of Winnsboro*, 252 La. 605, 211 So. 2d 665, 670 (La. 1967) (on rehearing) ("By adequate remedy at law is |₆meant one which is as speedy, efficient, and complete as the remedy in equity."). *See also C. Napco, Inc. v. City of New Orleans*, 06–0603, p. 6 (La.App. 4 Cir. 3/7/07), 955 So.2d 155, 160 ("An injunction is a harsh, drastic remedy that should only issue where the petitioner is threatened with irreparable harm and has no adequate remedy at law.").

■ A "court may hear an application for a preliminary injunction ... upon the verified pleadings or supporting affidavits, or may take proof as in ordinary cases." La. C.C.P. art. 3609. "A preliminary injunction shall not issue unless notice is given to the adverse party and an opportunity had for a hearing." La. C.C.P. art. 3602. Ordinarily, to prevail in the district court on a petition for preliminary injunction, the petitioner is required to establish by *prima facie* evidence that: 1) he will suffer irreparable injury, loss, or damage if the motion for preliminary injunction is not granted; and 2) he is entitled to a preliminary injunction through at least a showing that he will likely prevail on the merits of the case. *See Historic Restoration, Inc. v. RSUI Indem. Co.*, 06–1178, p. 11 (La.App. 4 Cir. 3/21/07), 955 So.2d 200, 208; La. C.C.P. art. 3601. The *prima facie* standard of proof to obtain a preliminary injunction is less than that required for a permanent injunction. *See Smith*, 13–1171 at p. 6, 133 So.3d at 74.

■ "A trial court has broad discretion in the granting or denial of a preliminary injunction, and will not be disturbed on review absent a clear abuse of that discretion." *Yokum v. Pat O'Brien's Bar, Inc.*, 12–0217, p. 6 (La.App. 4 Cir. 8/15/12), 99 So.3d 74, 80 (citing *Smith v. West Virginia Oil & Gas Co.*, 373 So. |₇2d 488, 493 (La. 1979)) (internal quotations omitted). "This broad standard is, of course, based upon the conclusion that the trial court committed no error of law and was not manifestly erroneous or clearly wrong in making a factual finding that was necessary to the proper exercise of its discretion." *Yokum*, 12–0217 at p. 7, 99 So.3d at 80 (citing *South East Auto Dealers Rental Ass'n, Inc. v. EZ Rent to Own, Inc.*, 07–0599, pp. 4–5 (La.App. 4 Cir. 2/27/08), 980 So.2d 89, 93). Absent a clear abuse of discretion, the denial of a preliminary injunction will not be overturned on appeal. *See Oestreicher v. Hackett*, 94–2573, p. 3 (La.App. 4 Cir. 5/16/95), 660 So.2d 29, 31.

**2**

■ We now explain why Construction Diva failed to establish through evidence that it will suffer irreparable harm. In order to prove that irreparable harm will befall a party from the non-issuance of a preliminary injunction, the petitioning party must show that "money damages cannot adequately compensate for the injuries suffered and the injuries 'cannot be measured by pecuniary standards.'" *Historic Restoration*, 06–1178 at p. 11, 955 So.2d at 208 (quoting *Saunders v. Stafford*, 05–0205, p. 6 (La.App. 4 Cir. 1/11/06), 923 So.2d 751, 754). "[M]ere inconvenience is not enough to show irreparable injury needed for the issuance of a preliminary injunction." *Hobbs v. Gorman*, 595 So.2d 1264, 1266 (La. App. 4th Cir. 1992).

■ Here, however, Construction Diva did not offer proof of irreparable

harm, but instead sought to take advantage of a jurisprudential exception to the irreparable harm requirement. Specifically, in *Jurisich v. Jenkins*, 99–0076 (La. 10/19/99), 749 So.2d 597, the Supreme Court established an exception to the irreparable harm requirement for instances when the plaintiff asks for a prohibitory injunction that seeks only to order compliance with a prohibitory law. The requisite showing of irreparable injury is dispensed with "when the conduct sought to be restrained is unconstitutional or unlawful, *i.e.*, when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or a violation of a constitutional right." *Jurisich*, 99–0076, p. 4, 749 So.2d at 599, citing to *South Cent. Bell Tel. Co. v. Louisiana Pub. Serv. Comm'n*, 555 So.2d 1370 (La. 1990). Thus, under *Jurisich*, "[o]nce a plaintiff has made a *prima facie* showing that the conduct to be enjoined is reprobated by law, the petitioner is entitled to injunctive relief without the necessity of showing that no other adequate legal remedy exists." 99–0076, p. 4, 749 So.2d at 599.

 This jurisprudential rule, however, requires three findings by the court before a plaintiff can circumvent the irreparable harm requirement: first, that the conduct that is sought to be enjoined violates a prohibitory law (whether an ordinance or a statute or the constitution); second, that the injunction seeks to restrain conduct, not order it;[4] and third, that the petitioner has met the low burden of making a *prima facie* showing that he is entitled to the relief sought. *See Faubourg Marigny Imp. Ass'n, Inc. v. City of New Orleans*, 15–1308, p. 15–16

(La.App. 4 Cir. 5/25/16), 195 So.3d 606, 616–617.

In this case, Construction Diva asserts that the City's rejection of its bid on the grounds that it did not have landscaping listed under its disadvantaged business certification resulted in an impermissible deviation from the bidding documents, none of which required the successful bidder to be certified as a landscaper on its disadvantaged business certification. The City's deviation, Contract Diva contends, violated the clear, prohibitory dictates of Louisiana's Public Bid Law, thus relieving it of the burden of proving irreparable harm. *See* La. R.S. 38:2212, *et seq.*

Specifically, the Public Bid Law "was enacted with in the interest of the taxpaying citizens and has for its purpose their protection against contracts of public officials entered into because of favoritism and involving exorbitant and extortionate prices." *Enmon Enterprises, L.L.C. v. City of New Orleans ex rel. New Orleans Aviation Bd.*, 11–0459, p. 6 (La.App. 4 Cir. 9/28/11), 76 So.3d 548, 552, citing *Haughton Elevator Div. v. State, Div. of Admin.*, 367 So.2d 1161, 1164 (La. 1979). Louisiana's Public Bid Law provides that all public work contracts "shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans, and specifications as advertised." La. R.S. 38:2212 A(1)(a). It also mandates that "[t]he provisions and requirements of this Section and those stated in the bidding documents shall not be waived by any entity." La. R.S. 38:2212 B(1).

 Since its initial passage, the Louisiana Legislature has repeatedly

---

4. This is an important distinction. A petitioner is entitled to this exception only when the injunction sought is prohibitory, not mandatory. A prohibitory injunction is one that seeks to restrain conduct. *See Jurisich*, 99–0076, p. 4, 749 So.2d at 599. A mandatory injunction, on the other hand, "commands the doing of some action" and "cannot be issued without a hearing on the merits." *Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa*, 04–0270, p. 7 (La.App. 1 Cir. 3/24/05), 906 So.2d 660, 664.

amended the law "to narrow the ability of a public entity to waive aspects of the law or the bidding documents themselves as mere formalities or errors of form." *See Enmon Enterprises*, 11–0459, p. 8, 76 So.3d at 553. The Louisiana Supreme Court has repeatedly recognized these restrictions on deviations from the public bidding laws. *See, e.g., Broadmoor L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Authority*, 04–0211, 04–0211, p. 8 (La. 3/18/04), 867 So.2d 651, 657; *Hamps Construction, L.L.C. v. City of New Orleans*, 05–0489, p. 9 (La. 2/22/06), 924 So.2d 104, 110. Therefore, "a public entity cannot deviate in any manner from the requirements it sets forth in its bid documents and the requirements set forth in any aspect of the Public Bid Law." *Enmon Enterprises*, 11–0459, p. 10, 76 So.3d at 554.

Having reviewed the record, however, we cannot say that the trial court was wrong in refusing to conclude that City deviated from the bid documents or violated the public bid law. The trial judge, therefore, did not abuse her discretion when she concluded that Construction Diva failed to establish entitlement to the jurisprudential exception to the irreparable harm requirement. Simply put, Construction Diva failed to establish that in rejecting its bid the City deviated from those requirements set out in the bidding documents. Construction Diva, therefore, failed to prove that the City's actions violated a prohibitory law, the first element of the exception. We first observe that the evidence indicates clearly that Construction Diva was never certified as a disadvantaged business in the area of landscaping. As noted, Construction Diva applied for a disadvantaged business certification. On its application, Construction Diva described itself as a "general contractor." The application also required Construction Diva to identify the types of services and products it provided. It selected: 1) new single-family housing construction; 2) residential remodelers; 3) commercial and institutional building construction. Construction Diva also specified the types of general construction services it provided, and, when asked, indicated that it desired "to become certified" in "hazardous material & asbestos abatement." On April 25, 2014, the City wrote to Construction Diva, noting that it had been "approved for certification as a State & Local Disadvantaged Business Enterprise (SLDBE) for the following categories: Building Construction (Commercial & Institutional), Residential Remodeler, New Single Family Housing Construction."

We next observe that the invitation to bid at issue clearly states that it is for "Airport Property Landscaping Annual Maintenance." The Bid Specifications document, which was attached to the Invitation to Bid, indicates that the contract is for the "[m]aintenance of landscape areas throughout the airport site on a full time basis, as well as installation of supplemental plant material," and then goes on to detail the manner in which the contractor is to, among other things, install new plants, remove old plants, replace annual plants, and maintain the grounds of several different properties in the municipal area owned by the Aviation Board.

The Invitation to Bid, therefore, indicated clearly that the project at hand was one for landscaping services. Equally clear is the fact that Construction Diva was not certified as a disadvantaged business in the area of landscaping at the time it submitted its bid.[5] Given the nature of the contract up for bid, and Construction Diva's lack of disadvantaged business certification in landscaping, we cannot say that the trial judge was wrong when she

**5.** There is some indication in the record that Construction Diva sought Disadvantaged Business certification in landscaping after its bid was rejected.

concluded that the City did not deviate from the bid requirements in rejecting Construction Diva's bid. Construction Diva, therefore, did not establish that the City's rejection of its bid was a violation of a prohibitory law. Accordingly, it failed to meet its burden of proving entitlement to the irreparable harm exception. *See Faubourg Marigny Imp. Ass'n*, 15–1308, p. 20, 195 So.3d at 619. Further, the record shows clearly that Construction Diva offered no evidence of any other type of irreparable harm at the hearing on its request for a preliminary injunction. The trial court, therefore, did not abuse its discretion when it denied Construction Diva's request for a preliminary injunction.

## B

We next analyze Construction Diva's arguments with regards to the trial court's refusal to grant its request for a writ of mandamus.

### 1

■ A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. *See* La. C.C.P. art. 3862. A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. *See* La. C.C.P. art. 3863. A " 'ministerial duty' is one in which no element of discretion is left to the public officer, in other words, a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law." *Landis Const. Co., LLC v. Reg'l Transit Auth.*, 15–0854, p. 10

(La.App. 4 Cir. 5/25/16), 195 So.3d 598, 605, quoting *Newman Marchive P'ship, Inc. v. City of Shreveport*, 07–1890, p. 5 (La. 4/8/08), 979 So.2d 1262, 1266.

■ Mandamus is an extraordinary remedy that is to be used sparingly. *Id.*, 00–1146, p. 11, 798 So.2d at 1175. A writ of mandamus, therefore, may not be issued to compel a public official to exercise discretionary authority. *Id.*, p. 11, 798 So.2d at 1175–1176. It never issues in doubtful cases. *City of Hammond v. Parish of Tangipahoa*, 07–0574, p. 11 (La.App. 1 Cir. 3/26/08), 985 So.2d 171, 181. Louisiana's jurisprudence, however, has shown that in the realm of public bid law, mandamus has been an appropriate remedy to award publicly bid contracts when the law requires. *See, e.g., Concrete Busters of Louisiana, Inc. v. The Board of Commissioners of the Port of New Orleans*, 10–1172, p. 10 (La. App. 4 Cir. 2/2/11), 69 So.3d 484, 489–490.

■ We review a trial court's decision to deny a request for a writ of mandamus under an abuse of discretion standard. *See A.M.E. Disaster Recovery Services, Inc. v. City of New Orleans*, 10–1755, p. 9 (La.App. 4 Cir. 8/24/11), 72 So.3d 454, 460.[6] "An appellate court will grant a writ of mandamus only when there is a usurpation of judicial power or clear abuse of discretion." *Wallace C. Drennan, Inc. v. Sewerage & Water Board of New Orleans*, 00–1146, pp. 3–4 (La.App. 4 Cir. 10/3/01), 798 So.2d 1167, 1171.

### 2

We now explain why Construction Diva failed to establish that a writ of mandamus

---

6. Although we reviewed a trial court's denial of a writ of mandamus under the manifest error standard in *Clothesline Laundromat, Inc. v. City of New Orleans*, 11–1578, p. 1 (La.App. 4 Cir. 8/1/12), 98 So.3d 901, 902, we conclude that the abuse of discretion standard is the appropriate benchmark by which to review the judgment in this case. The judg-

ment in *Clothesline*, unlike the one in the present case, turned upon a factual finding. Findings of fact regarding whether to issue a writ of mandamus are subject to the manifest error standard of review. *See Hess v. M & C, Inc.*, 14–962, p. 3 (La.App. 3 Cir. 2/11/15), 157 So.3d 1200, 1203.

should have been issued in this case. The writ of mandamus, as noted, can only be issued against a public entity to compel the performance of a ministerial, non-discretionary, duty. Because we have concluded that the trial judge did not abuse her discretion when she denied Construction Diva's request for a preliminary injunction we must in this case affirm her denial of Construction Diva's request for a writ of mandamus. Simply put, in rejecting Construction Diva's claim, the trial judge concluded that the City complied with its clear ministerial duties by not deviating from the bid documents or the public bid law. Issuance of the writ under these circumstances would, in effect, compel the City to engage in an impermissible deviation from both the bid documents and the non-discretionary provisions of the public bid law and its interpretive jurisprudence. We, accordingly, conclude that the trial judge did not abuse her discretion when she denied Construction Diva's request for a writ of mandamus.

## DECREE

We affirm the trial court's judgment of March 14, 2016, which denied Construction Diva, L.L.C.'s request for a preliminary injunction and a writ of mandamus.

**AFFIRMED.**

JENKINS, J., DISSENTS WITH REASONS

I respectfully dissent from the majority's conclusion that the City did not violate the Public Bid Law when it rejected Construction Diva's bid.

Here, the City rejected Construction Diva's bid on the grounds that it was "nonresponsive." According to the City:

Bidder failed to satisfy the SLDBE requirement. Construction Diva, LLC is not a certified SLDBE in the area of landscaping. We are unable to count Construction Diva, LLC's participation toward the SLDBE goal. As such, the attainment is 0% and does not comply with the SLDBE requirement for this project. [Emphasis in original.]

After Construction Diva protested the rejection of its bid, the City stated that it was denying the bid protest because "the airport DBE rules do in fact require that a DBE firm be certified in the field of work or services to be provided."

Under Louisiana's Public Bid Law, contracts for public works projects exceeding $150,000 "**shall be** advertised and **let by contract to the lowest** responsible and **responsive bidder who ha[s] bid according to the bidding documents as advertised**." La. R.S. 38:2212(A)(1) (emphasis added).[1] The "provisions and requirements" in the bid documents and in La. R.S. 38:2212 "shall not be waived by any entity." La. R.S. 38:2212(B)(1).

The requirement that a bidder be "responsive" in order to be awarded a public contract is a recent requirement added to the Public Bid Law during the 2014 legislative session. See 2014 La. Acts 759. Although the terms "responsive" and "responsive bidder" are not defined by the statute, they generally refer to whether a particular bid or bidder complies with the bid law's statutory requirements and the requirements stated in the bid documents as advertised by the public entity. See La. Atty. Gen. Op. No. 15–0052, 2015 WL 4128654 (June 3, 2015).[2]

1. "Bidding documents" are defined in the Public Bid Law as "the bid notice, plans and specifications, bid form, bidding instructions, addenda, special provisions, and all other written instruments prepared by or on behalf of a public entity for use by prospective bidders." La. R.S. 38:2211(A)(2).

2. Although Louisiana Attorney General Opinions are merely advisory and not binding, the

Thus, to determine whether Construction Diva was the lowest "responsive bidder" to whom the contract must be awarded, we must examine the requirements of the Public Bid law and those requirements set forth in the City's bid documents for this project.

As for the Public Bid Law, there are no provisions requiring that bidders be SLDBE-certified in the specific work set forth in the bid documents. Likewise, although the bid documents establish the City's commitment to participation by SLDBEs on this project, nowhere in the bid documents is there a requirement that the successful bidder be SLDBE-certified in the field of landscaping.

The following bid documents refer to the City's SLDBE requirements for this contract:

- The "Invitation to Bid" ("ITB") states that "[t]here is a 40.00% SL/DBE goal percentage for this contract."
- The "Additional Contract Terms and Conditions" found as Attachment "B" to the ITB state that "[i]t is the policy of the City and NOAB in conjunction with its State Local Disadvantaged Business Enterprise (SLDBE) program to encourage maximum utilization of firms, owned and controlled by socially and economically disadvantaged persons. **Firms participating as SLDBE firms must be currently listed as SLDE firms by one of the certifying agencies of the SLDBE program. The certifying agencies for the SLDBE program are the City of New Orleans (CNO),** Sewerage & Water |₃Board of New Orleans (S & WB), **New Orleans Aviation Board (NOAB),** and Harrah's Jazz Casino.

- Attachment "F" to the ITB is the "Schedule of Contract Participation," which states that "**[f]irms must be (AC)DBE- or SLDBE-certified at the time of bid submission in order to count their participation towards that specific goal.**"

The bid documents, therefore, require only that a bidder seeking work under City's SLDBE program for airport contracts be DBE-certified by the City of New Orleans or the NOAB at the time of bid submission. It is undisputed that when Construction Diva submitted its bid for this contract, it was certified by the City of New Orleans as an SLDBE. Whether the airport has "rules" in place which require that "a DBE firm be certified in the field or work or services to be provided" in order to meet its DBE goals is immaterial, given that these "rules" are not included in the bid documents. I disagree with the majority's finding that the mere "nature of the contract up for bid," which is described in the Invitation to Bid as "landscaping services," mandates that all responsive bidders be SLDBE-certified in landscaping.

The issue raised in this appeal implicates one of the important purposes of the Public Bid Law, which is to "insure fundamental fairness to the bidders in the [public bid] process by setting forth specific requirements for particular bids." La. Atty. Gen. Op. No. 03–1401, 2003 WL 22683704 (Oct. 29, 2003). "Inherent in the bidding process is the requirement that the public body shall prescribe a common standard on all matters that are material to the proposals. To that end the interested person may bid intelligently and will be induced to bid by the promise of impartiality." *Id.* It is in the best interest of the

courts of this State have recognized their persuasive authority, particularly when there are no cases on point. *Orleans Parish Sch. Bd. v.*

*Quatrevaux*, 13–1653, p. 10 (La.App. 4 Cir. 11/7/14), 154 So.3d 612, 618.

taxpayers of Louisiana to award contracts in favor of a bidder such as Construction Diva who has complied with the bidding requirements in all respects. *Id.*

"In enacting the Public Bid Law, the legislature has specifically prescribed the conditions upon which it will permit work to be done on its behalf or on behalf of its political subdivisions." *Concrete Busters of Louisiana, Inc. v. Bd. of Comm'rs of Port of New Orleans*, 10–1172, p. 4 (La.App. 4 Cir. 2/2/11), 69 So.3d 484, 486–87. Given the nature of the legislative mandate, a political entity such as the City "has no authority to take any action which is inconsistent with the Public Bid Law." *Id.*, 10–1172 at pp. 4–5, 69 So.3d at 487.

In this case, neither the bidding documents nor the bid laws require bidders to be SLDBE-certified in landscaping. *See Durr Heavy Constr., LLC v. City of New Orleans*, 15–0915 (La.App. 4 Cir. 3/16/16), —— So.3d ——, 2016 WL 1061384 (Jenkins, J., dissenting), *writ granted*, 16–609 (La. 4/15/16), 189 So.3d 384 (finding bid responsive where bid documents did not require proposal number on outside of sealed bid envelope). Therefore, I find that the City was required by law to award the contract to Construction Diva, which was the lowest numerical bidder whose bid complied with the requirements set forth in the bid documents and the Public Bid Law. Because I find that the City contravened the Public Bid Law by rejecting Construction Diva's responsive bid, I would reverse the trial court's judgment and order the City to award the landscaping contract to Construction Diva.