| ORLEANS PARISH SCHOOL BOARD | * | NO. 2020-CA-0043 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| THE CITY OF NEW ORLEANS AND NORMAN WHITE, IN HIS OFFICIAL CAPACITY AS THE CHIEF FINANCIAL OFFICER FOR THE CITY OF NEW ORLEANS | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-05174, DIVISION "J"
Honorable D. Nicole Sheppard,
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Daniel L. Dysart, Judge Tiffany G. Chase)


William D. Aaron, Jr.
Anna A. Rainer
AARON & GIANNA, PLC
201 St. Charles Avenue, Suite 3800
New Orleans, LA 70170
        COUNSEL FOR PLAINTIFF/APPELLANT


James M. Garner
Debra J. Fischman
Timothy B. Francis
Ashley Gremillion Coker
Stuart D. Kottle
SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.
909 Poydras Street, 28th Floor
New Orleans, LA 70112-1033

Sunni J. LeBeouf
CITY ATTORNEY
Donesia D. Turner
SENIOR CHIEF DEUPTY CITY ATTORNEY
Kimberly K. Smith
ASSISTANT CITY ATTORNEY
Tanya L. Irvin
ASSISTANT CITY ATTORNEY
1300 Perdido Street, Room 5E03
New Orleans, LA 70112


Ike Spears
Diedre Pierce Kelly
SPEARS & SPEARS
909 Poydras Street, Suite 1825
New Orleans, LA 70112
          COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED IN PART, REVERSED IN PART,
VACATED IN PART, AND REMANDED**

**JUNE 3, 2020**

DLD
EAL
TGC

The Orleans Parish School Board ("OPSB") appeals a judgment from the Civil District Court for the Parish of Orleans, which denied its request for a writ of mandamus and a preliminary injunction. The City of New Orleans answered the appeal, seeking a reversal of the trial court's denial of two exceptions should this Court reverse the trial court's judgment denying the preliminary injunction and the mandamus.

For the reasons that follow, we find that the trial court erred in denying the OPSB's request for a preliminary injunction. We do not, however, find any error in its denial of the request for a mandamus. Nor do we find any abuse of the trial court's discretion in denying the City's exceptions of improper cumulation of actions and improper use of a summary proceeding, which were raised by the City in its answer to the appeal. However, we find that the trial court erred in its partial grant of the City's peremptory exception of no cause of action.

**FACTUAL BACKGROUND**

On May 15, 2019, the Orleans Parish School Board filed a "Petition for a Writ of Mandamus, or in the Alternative, for Preliminary and Permanent Injunction, Declaratory Judgment, and Damages." The Petition names as

1

defendants the City of New Orleans and Norman White, in his capacity as the Chief Financial Officer for the City of New Orleans (collectively, the "City").

According to the Petition, the City, through the authority vested in it by the Louisiana Constitution, various statutes and the New Orleans Home Rule Charter, has collected ad valorem taxes and sales and use taxes on behalf of the OPSB. Those taxes, the OPSB maintains, are "dedicated and to be used exclusively for local elementary and secondary schools." However, according to the OPSB's Petition, the City has failed to disburse all of those taxes it has collected on the OPSB's behalf.

The OPSB further alleges that, since 2007, the City has been improperly using some of the taxes collected on the OPSB's behalf to fund its statutory obligations to various retirement funds. Those funds include the pension funds of the "City Clerks, the Assessors, New Orleans Firefighters, District Attorneys, Registrars of Voters, and Sheriffs."

Additionally, the Petition alleges that the City "has been unconstitutionally collecting an administrative fee for its collection of OPSB's taxes." The sums that the City has allegedly withheld amount to more than $7.6 million, which the City has used pay its pension fund obligations, and "approximately $3.4 million in administrative fees that City withholds each year." In addition to these sums, the OPSB alleges that, "[u]pon information and belief," that "the amount of funds improperly withheld by the City far exceeds" these amounts.

The Petition seeks relief in the following ways. First, it seeks a writ of mandamus, directing "the ministerial duty" of disbursing all past, present and future tax proceeds. Second, it seeks a preliminary and permanent injunction to bar the City from "withholding and/or diverting the proceeds of an ad valorem tax

2

and sales and use taxes . . . for a purpose other than the exclusive benefit of the OPSB." Third, the Petition seeks, in the alternative, a declaratory judgment declaring that the City's actions in withholding and/or diverting the ad valorem taxes and sales and use taxes for purposes other than the OPSB's exclusive use violates Louisiana's Constitution and the New Orleans Home Rule Charter. The Petition also seeks a determination that La. R.S. 47:1997.1 is unconstitutional. Finally, and in the alternative, the Petition seeks damages in the amount "of all sums illegally withheld/diverted" by the City, judicial interest and costs.

The City responded to the Petition by filing several exceptions – declinatory exceptions of insufficiency of service of process, lack of subject matter jurisdiction, unauthorized use of a summary proceeding and improper use of summary proceeding; peremptory exceptions of no cause of action and prescription; and dilatory exceptions of improper cumulation of actions, and vagueness, which the OPSB opposed. Shortly before the City's exceptions and the OPSB's request for a preliminary injunction were scheduled for a hearing, the City filed a Motion to Stay the proceedings until the Supreme Court ruled on an application for a writ of certiorari in the matter entitled *Downtown Dev. Dist. of City of New Orleans v. City of New Orleans*, as it raised many of the same issues in the instant matter.[1] The trial court granted the motion to stay on July 19, 2019. The OPSB filed an application for a writ of supervisory review with this Court, seeking expedited relief. This Court granted the writ application, vacating the judgment granting the motion to stay, and ordering that the trial court conduct a

---

[1] The Supreme Court denied the writ application on September 24, 2019. *See Downtown Dev. Dist. of City of New Orleans v. City of New Orleans*, 18-0726 (La. App. 4 Cir. 5/8/19), 272 So.3d 917, *writ denied*, 19-00947 (La. 9/24/19), 279 So.3d 388, and *writ denied*, 19-00942 (La. 9/24/19), 279 So.3d 937.

hearing on the request for a preliminary injunction and mandamus. *Orleans Parish School Board v. The City of New Orleans, et al*, 19-C-0659 (La. App. 4th Cir. 8/8/19)(unpub.).

The matter then proceeded to a hearing on September 25, 2019 on the OPSB's Petition as well as the City's various exceptions.[2] By judgment dated October 25, 2019, the trial court denied the OPSB's request for a writ of mandamus, and its request for a preliminary injunction. The City's exceptions pertaining to subject matter jurisdiction, and insufficiency of service of process, were denied as moot. The exceptions raising the use of summary proceedings, the improper cumulation of actions, and vagueness were denied. The exception of prescription was deferred, while the exception of no cause of action was granted in part and deferred in part.

The OPSB timely appealed this judgment. The City answered the appeal, seeking to have the trial court's denial of its exceptions of improper use of a summary proceeding, improper cumulation of actions and vagueness reversed, in the event that this Court reverses the trial court's judgment denying the OPSB's request for a mandamus and preliminary injunction.[3]

**DISCUSSION**

In this appeal, the OPSB raises the following assignments of error. First, it contends that the trial court erred in denying its request for a preliminary

---

[2] The trial court originally scheduled the hearing to take place on November 13, 2019. The OPSB filed an application for a supervisory writ with this Court on the basis that the trial court failed to schedule the hearing within the deadlines set forth in La. C.C.P. arts. 3602 and 3782, and as ordered by this Court in response to its earlier filed writ application. This Court granted the writ application, vacated the order setting the hearing date, and ordered that a hearing be scheduled within 10 days. *Orleans Parish School Board v. The City of New Orleans*, et al, 19-C-0794 (La. App. 4th Cir. 9/16/19)(unpub.).
[3] In its appellate brief, the City makes no argument with respect to its exception of vagueness. We, therefore, do not address this issue.

4

injunction. It next contends that the trial court abused its discretion in denying its request for a writ of mandamus. Lastly, it contends that the trial court erred in granting, in part, the City's exception of no cause of action. As discussed more fully below, we agree with the OPSB that the trial court erred in denying its request for a preliminary injunction. We base this finding on our decision in the *Downtown Dev. Dist.* case, which addressed similar issues in the same context.[4] We do not, however, find that the trial court erred in denying the request for a writ of mandamus. That issue, too, was addressed and rejected by the *Downtown Dev. Dist.* Court. Finally, we agree that the trial court erred in granting, in part, the exception of no cause of action, as our jurisprudence does not recognize a partial grant of an exception of no cause of action.

Turning to the trial court's denial of the City's exceptions, we find no abuse of the trial court's discretion in denying the exceptions of improper cumulation of actions and improper use of summary proceedings.

### *Statutory provisions*

The authority for the OPSB, an agency of the State,[5] to levy taxes is derived from the Louisiana Constitution. Article VIII of the Louisiana Constitution of 1974, entitled "Education," provides in Section 13(C) provides that "[l]ocal funds for the support of elementary and secondary schools shall be derived" from the sources provided therein. For the OPSB, the Article states:

---

[4] In fact, the issues were so similar that the City sought to stay the instant proceedings on that basis, pending the Supreme Court's ruling on its application for a writ of certiorari in the *Downtown Dev. Dist.* case. In its motion to stay the proceedings, the City stated that "[t]he precise issues raised in the OPSB's suit to be considered by this Court are already pending review by the Louisiana Supreme Court." It noted that the "only additional relief sought in the OPSB matter [the instant matter] is a declaration that 'La. R.S. § 47:1997.1 is unconstitutional and further declaring that the [City's] imposition of a collection fee is unconstitutional.'" The City concluded its motion for a stay, seeking that the trial court "stay . . . [the] proceedings until the Louisiana Supreme Court provides guidance on these very same issues."

[5] *See Rousselle v. Plaquemines Par. Sch. Bd.*, 633 So.2d 1235, 1246 (La. 1994).

> The Orleans Parish School Board shall levy annually a tax not to exceed thirteen mills on the dollar of the assessed valuation of property within the city of New Orleans assessed for city taxation, and shall certify the amount of the tax to the governing authority of the city. The governing authority shall have the tax entered on city tax rolls. The tax shall be collected in the manner, under the conditions, and with the interest and penalties prescribed by law for city taxes. The money thus collected shall be paid daily to the Orleans Parish School Board.

This is not the sole source of taxing authority vested with the OPSB by the Louisiana Constitution. Article VI of the Constitution, entitled "Local and Government" provides additional authority in Section 29 for a local governmental entity and a school board to levy taxes. It authorizes local governmental subdivisions, including school boards, to "levy and collect a tax upon the sale at retail, the use, the lease or rental, the consumption, and the storage for use or consumption, of tangible personal property and on sales of services as defined by law," except as otherwise authorized in a home rule charter, and so long as it is "approved by a majority of the electors voting thereon in an election held for that purpose." La. Const. art. VI, § 29(A).

Article VI, § 29 also allows the legislature to authorize the "imposition of additional sales and use taxes by . . . school boards" so long as these taxes are "approved by a majority of the electors voting thereon in an election held for that purpose." La. Const. art. VI, § 29(B).

In accordance with subpart B of Article VI, § 29, the legislature enacted several statutes enabling a school board to levy additional sales and uses taxes, found under Title 47 of the Revised Statutes (Revenue and Taxation) and, more specifically, under Chapter 2–D, the "Uniform Local Sales Tax Code." La. R.S. 47:338.54, for example, provides generally, as follows:

A. (1) In addition to any other authority granted by a home rule charter or otherwise, the governing authority of any parish or school board may levy and collect an additional tax upon the sale at retail, the use, the lease or rental, the consumption, and the storage for use or consumption of tangible personal property and on sales of services as defined by law if approved by a majority of electors voting therein in an election held for that purpose.

Likewise, La. R.S. 47:338.84 provides:

A. In order to provide additional funds for the payment of salaries of teachers employed in the public elementary and secondary schools of the respective parishes and cities of the state and/or for the operation of the public elementary and secondary schools of the parishes and cities of the state, any parish or city school board in the state is hereby authorized to levy and collect a sales tax not in excess of one per cent within the parish or city, as the case may be, as hereinafter set forth provided that where there are dual school boards in any parish, both must accept the imposition and means of collection and dispersion of the tax.

B. The sales tax so levied shall be imposed by an ordinance of the parish or city school board, as the case may be, and shall be levied upon the sale at retail, the use, the lease or rental, the consumption and storage for use or consumption of tangible personal property and on sales of services in the parish or city, as the case may be, all as presently defined in R.S. 47:301 et seq.; provided, however, that the ordinance imposing said tax shall be adopted by the school board only after the question of the imposition of the tax shall have been submitted to the qualified electors of the parish or city at an election conducted in accordance with the general election laws of the state of Louisiana, and the majority of those voting in said election shall have voted in favor of the adoption of such ordinance. All costs of conducting the election required by this Section shall be borne by the parish or city school board calling the election.

C. This tax shall be in addition to all other taxes and shall be collected at the same time and in the same manner and pursuant to the definitions, practices and procedures set forth in R.S. 47:301 et seq.

7

The statute further expressly states that all proceeds of this tax are to be used "exclusively to supplement other revenues available to the school board for the payment of salaries of teachers in the elementary and secondary schools of the parish . . . , and/or for the expenses of operating said schools, and the ordinance imposing said tax and any amendments thereto shall state such purpose." La. R.S. 47:338.84 D.

Authority to levy additional taxes, specific to the OPSB, is found in La. R.S. 47:338.107 A, which provides:

> In order to provide additional funds for the payment of salaries of teachers and other personnel employed in the public elementary and secondary schools of Orleans Parish or for the purpose of maintaining and operating the public elementary and secondary schools of Orleans Parish or for the purpose of providing funds to pay for capital improvements of the public school system of Orleans Parish, or any combination of the above, including the acquisition of lands for building sites and playgrounds, purchasing, erecting and improving school buildings and related facilities and acquiring the necessary equipment and furnishings therefor, or for any one or more of said purposes, the Orleans Parish School Board is hereby authorized to levy and collect an additional sales and use tax not in excess of one-half of one percent within the parish of Orleans, as hereinafter set forth.

The tax levied pursuant to this statute is to be imposed "only after the question of the imposition of the tax shall have been submitted to the qualified electors of the parish of Orleans . . . and a majority of those voting in said election on the question shall have voted in favor of the imposition of such tax sales." La. R.S. 47:338.107 B.

The collection of all taxes in New Orleans is relegated to the Department of Finance for Orleans Parish. The New Orleans Home Rule Charter specifically provides that "[t]he Department of Finance, headed by the Director of Finance,

shall: (a)Collect all taxes, license and permit fees, and other moneys which may be due to or receivable by the City or any of its officers, departments, or boards. . . ." Chapter 13, Section 4-1301(1)(a), Home Rule Charter of the City of New Orleans. As this provision includes all collectible taxes, it encompasses sales and use taxes as well, which comports with La. Const. art. VII, § 3(B)(1) which mandates that "sales and use taxes levied by political subdivisions shall be collected by a single collector for each parish."

Similarly, the various constitutional provisions and statutes cited herein authorize the City of New Orleans to collect all taxes. *See*, La. Const. art. VIII, § 13 (C)("[t]he tax shall be collected in the manner, under the conditions, and with the interest and penalties prescribed by law for city taxes."); La. R.S. 47:338.84 C ("[t]his tax shall be in addition to all other taxes and shall be collected at the same time and in the same manner and pursuant to the definitions, practices and procedures set forth in R.S. 47:301 et seq."); La. R.S. 47:338.107 C ("[t]his tax shall be in addition to all other taxes and shall be collected at the same time and in the same manner and pursuant to the definitions, practices, and procedures set forth in R.S. 47:301 through 318, or in such other manner as may be set forth by the Orleans Parish School Board in the ordinance or resolution imposing said tax.").

### *Preliminary injunction*

At the outset, we note that, while ordinarily, judgments denying relief are interlocutory in nature and thus not appealable, an exception is made for judgments concerning preliminary injunctions. La. C.C.P. art. 3612 B expressly provides that "[a]n appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction." Our jurisprudence clearly reflects that "[t]he denial of a request for a writ of mandamus is . . . an appealable judgment." *Constr.*

9

*Diva, L.L.C. v. New Orleans Aviation Bd*., 16-0566, p. 2 (La. App. 4 Cir. 12/14/16), 206 So.3d 1029, 1032, *writ denied*, 17-0083 (La. 2/24/17), 216 So.3d 59.

It is well-settled that a trial court is afforded broad discretion in granting or denying a preliminary injunction, and the trial court's ruling will not be disturbed on appeal unless there is a clear abuse of discretion. *Harvey v. State*, 14-0156, p. 20 (La. App. 4 Cir. 12/16/15), 183 So.3d 684, 700, *writ denied*, 16-0105 (La. 3/4/16), 188 So.3d 1060; *Smith v. Brumfield*, 13-1171, p. 7 (La. App. 4 Cir. 1/15/14), 133 So.3d 70, 75; *Yokum v. Pat O'Brien's Bar, Inc*., 12-0217, p. 6 (La. App. 4 Cir. 8/15/12), 99 So.3d 74, 80. "That broad standard is, of course, based upon the conclusion that the trial court committed no error of law and was not manifestly erroneous or clearly wrong in making a factual finding that was necessary to the proper exercise of its discretion." *Yokum*, p. 7, 99 So.3d at 80 (citing *South East Auto Dealers Rental Ass'n, Inc. v. EZ Rent to Own, Inc*., 07-0599, pp. 4-5 (La. App. 4 Cir. 2/27/08), 980 So.2d 89, 93).

Our jurisprudence reflects that "a preliminary injunction may be issued on merely a *prima facie* showing by the plaintiff that he is entitled to relief." *Rand v. City of New Orleans*, 14-2506, p. 4 (La. 6/30/15), 173 So.3d 1148, 1151 (quoting *Mary Moe, L.L.C. v. Louisiana Bd. of Ethics*, 03-2220, p. 9 (La.4/14/04), 875 So.2d 22, 29). "The standard of proof to obtain a preliminary injunction on a *prima facie* showing is, however, 'less than that required for a permanent injunction.'" *Yokum*, 12-0217, p. 7, 99 So.3d at 80 (quoting *Historic Restoration, Inc. v. RSUI Indem. Co*., 06-1178, p. 11 (La. App. 4 Cir. 3/21/07), 955 So.2d 200, 208).

10

Ordinarily, in order to obtain a preliminary injunction, a petitioner must establish, by *prima facie* evidence, "that: (1) it will suffer irreparable injury, loss, or damage if the motion for preliminary injunction is not granted and (2) it is entitled to the relief sought through at least a showing that it will likely prevail on the merits of the case." *Easterling v. Estate of Miller*, 14-1354, p. 10 (La. App. 4 Cir. 12/23/15), 184 So.3d 222, 228. However, as this Court recognized in *Yokum*, 12-0217, p. 8, 99 So.3d at 81, an exception to the requirement that irreparable injury be shown was created by the Louisiana Supreme Court when the injunction "seeks only to order compliance with a prohibitory law." The Supreme Court explained:

> A petitioner is entitled to injunctive relief without the requisite showing of irreparable injury when the conduct sought to be restrained is unconstitutional or unlawful, i.e., when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or a violation of a constitutional right. *South Cent. Bell Tel. Co. v. Louisiana Pub. Serv. Comm'n*, 555 So.2d 1370 (La.1990). Once a plaintiff has made a prima facie showing that the conduct to be enjoined is reprobated by law, the petitioner is entitled to injunctive relief without the necessity of showing that no other adequate legal remedy exists.

*Id*. (quoting *Jurisich v. Jenkins*, 99-0076, p. 4 (La.10/19/99), 749 So.2d 597, 599).

This Court expounded on this exception, as follows:

> This jurisprudential rule, however, requires three findings by the court before a plaintiff can circumvent the irreparable harm requirement: first, that the conduct that is sought to be enjoined violates a prohibitory law (whether an ordinance or a statute or the constitution); second, that the injunction seeks to restrain conduct, not order it; and third, that the petitioner has met the low burden of making a *prima facie* showing that he is entitled to the relief sought.

11

*Faubourg Marigny Imp. Ass'n, Inc. v. City of New Orlea*ns, 15-1308, pp. 15-16 (La. App. 4 Cir. 5/25/16), 195 So.3d 606, 616-17 (citing *Yokum*, 12-0217, pp. 8-9, 99 So.3d at 81).

In this case, given the length of time that the OPSB alleges that the City has engaged in the improper diversion of taxes, it is clear that there is no imminent risk of irreparable injury. However, contrary to the City's position on this issue, we find that the City's actions violate prohibitory laws. As such, the OPSB is dispensed with the requirement of showing that it will suffer irreparable injury, as we found in the *Downtown Dev. Dist.* case.

We also disagree with the City that, in this case, a preliminary injunction is "an improper request for a mandatory injunction" because OPSB "sought to order, not restrain, conduct." Likewise, we disagree that a ruling which would compel the City "to direct money to [the] OPSB would be akin to a mandatory injunction, which is not proper without a hearing on the merits." These very issues were raised, and rejected, by this Court in the *Downtown Dev. Dist.* case. The preliminary injunction sought by the OPSB was clearly intended to restrain the City's improper continued diversion of taxes, dedicated to the OPSB, to fund some of the City's obligations.[6]

The City does not dispute that it uses taxes levied on behalf of the OPSB to fund some of its other obligations. The City argues, however, as it did in the *Downtown Dev. Dist.* case, that, because it is statutorily required by La. R.S. 11:82 to use monies collected through ad valorem taxes to fund statewide retirement

---

[6] As noted herein, the City argues that the trial court properly denied the request for a writ of mandamus given that the "OPSB can pursue its claims in an ordinary proceeding." We agree that a mandamus is not in order in this case, as we found in the *Downtown Dev. Dist.* case. We thus leave for another day the issue of whether the OPSB is entitled to damages in the amount "of all sums illegally withheld/diverted" by the City.

systems, its actions are lawful and cannot be construed to violate a prohibitory law.[7]

In *Downtown Dev. Dist.*, this Court examined whether the City was authorized to withhold certain proceeds of a special ad valorem tax benefitting the Downtown Development District (the "DDD"). This particular tax is additional to the regular ad valorem taxes and is levied on "all taxable real property located in the DDD boundaries" and is "to be used for public improvements, facilities, and services within the" district. *Id.*, p. 2, 272 So.3d at 922. The tax was continued in 2001, after a ballot proposition, which sought to continue the tax for an additional 25 years, was approved by the electorate.

As in the instant case, the DDD alleged that, in 2007, "the City began withholding money from the net tax receipts due to the DDD" "in an effort to finance the City's indebtedness to certain state pension funds." *Id.*, p. 3, 272 So.3d at 923.

The *Downtown Dev. Dist.* Court rejected the City's argument that because "the DDD tax is an ad valorem tax," the City was "performing its statutorily authorized function . . . to fund retirement systems via the collection and remission of aggregate ad valorem tax proceeds" "by withholding the disputed portion of the DDD tax." *Id.*, p. 18, 272 So.3d at 971. Citing the Louisiana Supreme Court decision of *City of New Orleans v. Louisiana Assessors' Ret. & Relief Fund*, 2005-2548 (La. 10/1/07), 986 So.2d 1, the Court noted that our jurisprudence has "consistently interpreted the constitution to prohibit the use of dedicated and

---

[7] La. R.S. 11:82 provides for the funding of state and statewide public retirement systems with ad valorem taxes, and sets forth various percentages of those taxes to be paid into the various systems. For example, for the Assessors' Retirement Fund, Orleans Parish must contribute funds of 1% of the aggregate taxes shown to be collectible on its tax rolls. La. R.S. 11:82 A(1). It must contribute .5% of the aggregate taxes to the Clerks of Court Retirement and Relief Fund. La. R.S. 11:82 (A)(2).

special taxes for purposes other than those for which they were levied."

*Downtown Dev. Dist.*, p. 20, 272 So.3d at 932.   Likewise, as the *La. Assessors* case found, "[t]he diversion of taxes dedicated to a specific purpose is expressly prohibited by La. Const. art. VI, §§ 26(B) and 32."[8]  *Id.*  The Court also noted that "La. R.S. 39:704 provides that the 'proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied. . . .'" *Id.*

Noting that the DDD tax is a dedicated tax "specifically for enhanced services in the DDD,"[9] the *Downtown Dev. Dist.* Court found that no conflicts exist between it and the statute requiring the City to fund the retirement systems (La. R.S. 11:82; *See*, footnote 6).  It concluded:

> The enabling statute prohibits the DDD tax from being used for purposes other than their dedicated purpose. Accordingly, La. R.S. 11:82 does not permit the City to withhold DDD tax proceeds to fund state retirement systems. The DDD has thus shown that it seeks to enjoin unlawful conduct.

*Id.*, p. 23, 272 So.3d at 933.  The Court, too, found no merit to the City's contention that the DDD was seeking a mandatory injunction:

> The preliminary injunction herein orders the City to restrain conduct; specifically, the district court ordered the City to stop withholding the disputed tax proceeds from the DDD. The record and the law provide no support for the City's argument that the injunction

---

[8] The constitutional articles referenced by the *La. Assessors* case provide as follows.  La. Const. art. VI, § 26, dealing with parish ad valorem taxes, provides in subpart B that "[w]hen the millage increase is for other than general purposes, the proposition shall state the specific purpose or purposes for which the tax is to be levied and the length of time the tax is to remain in effect. *All proceeds of the tax shall be used solely for the purpose or purposes set forth in the proposition.*" (Emphasis added).  La. Const. art. VI, § 32, dealing with special taxes, provides that "[f]or the purpose of acquiring, constructing, improving, maintaining, or operating any work of public improvement, a political subdivision may levy special taxes when authorized by a majority of the electors in the political subdivision who vote thereon in an election held for that purpose."

[9] *Id.*, p. 23, 272 So.3d at 933.

> mandates the City to undertake the affirmative act of changing its collection practices. The district court's judgment granted a prohibitory injunction, not a mandatory injunction. Because the injunction orders the City to refrain from violating prohibitory law and the Louisiana Constitution, the DDD satisfied the unlawful conduct exception and was not required to prove irreparable injury to prevail on a petition for preliminary injunction.

*Id.*, p. 23, 272 So.3d at 934. The Court distinguished the same cases on which the City relies in the instant matter. In both *Kruger v. Garden Dist. Ass'n*, 00-1135 (La. App. 4 Cir. 1/17/01), 779 So.2d 986, and *Harvey*, cases which found injunctions to be unwarranted because no irreparable injury was shown, there were no violations of prohibitory laws, unlike the *Downtown Dev. Dist.* case.

The instant matter raises essentially the same issues with respect to the issuance of a preliminary injunction. The constitutional authority for the OPSB to obtain funding from ad valorem taxes, La. Const. art. VIII, § 13(C), specifically states its purpose to be for "funds for the support of elementary and secondary schools." The article indicates that this source of funding for schools "*shall* be derived" from the ad valorem taxes. *Id.* (Emphasis added). The use of the word "shall" clearly denotes the mandatory nature of this provision. *See* La. R.S. 1:3 ("[t]he word 'shall' is mandatory. . . ."). Clearly, the taxes contemplated by this Article are dedicated taxes. "A 'dedicated tax' is, quite simply, a tax that is dedicated for a specific purpose." *Downtown Dev. Dist.*, p. 21, 272 So.3d at 933 (quoting *La. Assessors*, 05-2548, p. 18, 986 So.2d at 16).

Similarly, the sales and use taxes levied by the OPSB are also dedicated taxes. La. R.S. 47:338.84 A, for example, provides for sales taxes to be used for "additional funds" for teachers' salaries, "and/or for the operation of the public elementary and secondary schools." That this is a dedicated tax is further

supported by the statute's express statement that the proceeds of the tax are to be used exclusively "for the payment of salaries of teachers in the elementary and secondary schools of the parish or city, as the case may be, and/or for the expenses of operating said schools." La. R.S. 47:338.84 D.

Likewise, La. R.S. 47:338.107 A provides for the collection of sales and use taxes for teachers' and other personnel salaries, or for maintaining, operating or making of capital improvements of schools. Subpart D of this statute leaves no doubt that the taxes are dedicated, as they are to be used "exclusively" for these purposes ("including the acquisition of lands for building sites and playgrounds, purchasing, erecting and improving school buildings and related facilities and acquiring the necessary equipment and furnishings therefor, or for any one or more of said purposes").

As we found in *Downtown Dev. Dist.*, the City is wholly without authority to use the OPSB taxes for purposes other than their dedicated purposes. It follows that the City may not withhold the OPSB tax proceeds to fund the various retirement systems. We, thus, find that the OPSB has made a *prima facie* showing that it is entitled to a preliminary injunction in this matter and the trial court erred in denying its request for an injunction. The trial court's judgment is, therefore, reversed, and the OPSB's request for preliminary injunctive relief is granted.

Given our finding that the OPSB is entitled to injunctive relief, we must also address the issue of whether the City is entitled to retain an administrative or collection fee from the taxes levied on behalf of the OPSB. There is no dispute that the City has retained an administrative fee from these taxes. According to the affidavit of Walter J. O'Brien, Jr., who is employed by as the Financial Operations Manager in the Bureau of the Treasury for the City's Department of Finance,

16

"[w]ithin each collection cycle the City deducts and retains not more than two percent of the OPSB's proportionate share of ad valorem taxes collected pursuant to authorization by LA R.S. 47:1997.1" which "amount totals approximately $3.3 million annually, subject to fluctuations in the tax rolls." These sums are "deposited into the general fund for the City of New Orleans." The City contends that it is authorized to retain these sums under La. R.S. 47:1997.1.[10]

Similarly, according to Romy Samuel, the Collector of Revenue in the Bureau of Revenue for the City's Department of Finance, "the City collects 1.5% on sales and use taxes on behalf of the OPSB throughout the year" and "[o]f the amounts collected, the City retains 1.6% of those funds as a collection fee pursuant to an agreement between it and the OPSB dated August 5, 1982." That agreement provides that, in exchange for its services in collecting the sales and uses taxes, the City of New Orleans shall retain "one and six-tenths (1.6) percent of the total amount of the tax, interest and penalties collected by it for" the OPSB. The agreement likewise provides that it "shall remain in full force and effect until terminated by either party hereto."

While we recognize that La. R.S. 47:1997.1 allows for collection costs of no more than two percent to be assessed against "[e]ach tax recipient governing body that receives a portion of ad valorem taxes," this statute cannot override the

---

[10] La. R.S. 47:1997.1 provides as follows:

> A. Each tax recipient governing body that receives a portion of ad valorem taxes shall reimburse the director of finance for the city of New Orleans the cost of collections for ad valorem taxes.
> B. The collection cost charged to each tax recipient governing body for the reimbursement of expenses associated with the collection of ad valorem taxes shall not exceed two percent.
> C. The collection cost charged will be deducted by the director of finance for the city of New Orleans from each tax recipient governing bodies' proportionate share of ad valorem taxes. The proceeds received from the collection charge shall be deposited into the general fund for the city of New Orleans.

17

constitutional directive provided by La. Const. art. VIII, § 13. As this Court has indicated, "[i]t has long been held that the 'Constitution is the paramount law, to which all other laws must yield, and its provisions must prevail over an act of the Legislature which is in conflict therewith.'" *Bd. of Supr's of Louisiana State Univ. v. Bickham*, 14-0975, p. 15 (La. App. 4 Cir. 3/11/15), 163 So.3d 119, 127, *writ denied sub nom. Bd. of Supr's of Louisiana State Univ. & Agr. & Mech. Coll. v. Bickham*, 15-0738 (La. 6/1/15), 171 So.3d 934 (quoting *State v. Smith*, 209 La. 363, 370, 24 So.2d 617, 619 (La.1945)). *See also La. Assessors*, 05-2548, p. 13 986 So.2d at 13 ("the constitution is the supreme law of this state, to which all legislative acts must yield"). As we noted in *Bickham*, this does not require a court to declare a statute which appears to conflict with the Constitution unconstitutional, but rather, "to interpret and apply the provisions found within [the statute] in light of the dictates of our constitution." *Id.*

Article VIII, § 13(C) provides that the OPSB is to levy an ad valorem tax and certify the tax to the City, which is to collect the tax. "The money thus collected shall be paid daily to the Orleans Parish School Board." *Id.* The Louisiana Supreme Court has interpreted prior versions of this Article, different in immaterial ways, to require that all ad valorem taxes collected on behalf of the OPSB be paid to it, without any deductions for collection or administrative fees. In *Orleans Par. Sch. Bd. v. City of New Orleans*, 198 La. 483, 487, 3 So. 2d 745, 746 (1941), the Court found a "mandatory duty of the Commission Council to cause the seven-mill school tax to be collected under the same procedure that it collects its own taxes." It likewise found a "mandatory duty [for it] to pay whatever proceeds that are derived from the tax daily to the School Board." *Id.* While the issue in that case was whether an ordinance allowing the Commissioner

18

of Finance for the City of New Orleans to deduct of one percent of all real estate and personal property taxes as collection fees, the Court stated:

> The language used, 'the money thus collected shall be paid daily to said board' in the constitutional provision and the act carrying it into effect is clear and unambiguous and necessarily means all money collected by the City from this tax must be paid daily to the School Board. The words 'the' and 'thus' as used in the provision 'the money thus collected shall be paid * * * to said board' are clear and clearly indicate it was intended that the entire amount collected from the seven-mill tax shall be paid to the School Board daily. To permit the payment of any sum less than the entire amount derived from the tax would violate the provision. If the lawmakers had intended to allow a deduction to be made to cover the expenses of collecting the tax some provision to that effect would have been made.

*Id.*, 3 So.2d at 746. The Court reasoned that, while "[t]he City has many resources for obtaining necessary funds to carry on its affairs[,] . . . [and] maintains a collecting department, [which it] necessarily will have to maintain such for the collection of its taxes[,] . . . [t]he School Board has the power to levy taxes but it has never been a collecting body." *Id.* The Court then noted that, while the Constitution grants the OPSB "the right to levy taxes[,] necessarily the framers of the Constitution had to make some provision for their collection." *Id.* It found that, [i]n imposing the duty upon the municipality to collect the school tax it was not the intention of the lawmakers to grant the municipality the right to reduce the revenues derived from the tax by charging a percentage for their collection or otherwise." *Id.*, 3 So.2d at 746-47. Again, the Court reasoned that "the collection of the tax does not impose a hardship upon the City or entail any additi[onal] cost. Undoubtedly the lawmakers had this in contemplation when the constitutional provision was framed and the act carrying it into effect was enacted." *Id.*, 3 So.2d at 747.

19

That no deductions may be made by the City for ad valorem taxes collected and to be paid daily to the OPSB was confirmed in the later decision of *Orleans Par. Sch. Bd. v. City of New Orleans*, 238 La. 738, 116 So. 2d 505 (1959). At issue in that case was a statute that required the City to deduct from the taxes collected for the OPSB an amount representing its "proportionate share of the city's contribution to the Expense Fund of the Board of Assessors for the Parish of Orleans." *Id.*, 116 So.2d at 506. The Louisiana Supreme Court, citing the earlier *Orleans Par. Sch. Bd.* decision, found an injunction to be appropriate and ordered that all money collected from a tax levied by the OPSB be paid to it without any deductions. *See also*, *Orleans Par. Sch. Bd. v. City of New Orleans*, 156 So.2d 718, 720 (La. App. 4 Cir. 1963)(where this Court found that the cost of re-printing tax bills after a constitutional amendment allowed an increase in ad valorem taxes was to be borne by the City and not the OPSB, on the basis that all sums must be paid to the OPSB, without any deductions, quoting *Parker v. Cave*, 3 So.2d 617, 620 (1941) for the principle that "it clearly was not the intention of the lawmakers to grant to the municipality, as the designated tax collecting agency, the right to reduce the revenues of the School Board, the tax levying body, by lowering the percentage of the assessed valuation of the taxable property on which the tax is levied.").

The City discounts these cases, noting that the OPSB is "[r]elying on cases beginning some 80 years ago" and noting that they pre-dated the enactment of La. R.S. 47:1997.1, which it claims authorizes it collect fees. The City can point to no cases abrogating these cases and as such, the holdings of these cases, construing almost identical constitutional provisions for the funding of the OPSB, support our finding that "the legislature has no power to divert to others proceeds the

constitution requires 'be paid daily to said board.'" *La. Assessors,* 05-2548, p. 14, 986 So.2d at 14. Moreover, these cases have been cited, approvingly, by the Supreme Court even after the enactment of La. R.S. 47:1997.1, further indicating that the cases, while dated, still have binding effect. *See*, *e.g*., *La. Assessors*, 05-2548, p. 15, 986 So.2d at 14; *W. Feliciana Par. Gov't v. State*, 19-00878, pp. 12-13 (La. 10/11/19), 286 So.3d 987, 995.

Thus, we find that La. Const. art. VIII, §13 prevails over La. R.S. 47:1997.1 and the latter statute cannot be used as a basis for making any deductions to the ad valorem taxes collected on behalf of the OPSB.  La. R.S. 47:1997.1 may still be applied to other "tax recipient governing bod[ies]" as contemplated by the statute. As the Supreme Court has indicated, statutory "language broad enough to be applied both validly and invalidly may be restricted to those applications within the legislative authority, when such a result conforms to what the legislature intended and does not destroy the fundamental purpose of the act."  *New Orleans Firefighters Ass'n v. Civil Serv. Comm'n of City of New Orleans*, 422 So.2d 402, 414 (La. 1982).  *See also*, *St. Mary Anesthesia Assocs., Inc. v. Hosp. Serv. Dist. No. 2 of Par. of St. Mary*, 01-2852, pp. 13-14 (La. App. 1 Cir. 12/20/02), 836 So.2d 379, 389 ("if a statute is broad enough to be applied both validly and invalidly, the valid interpretation should be used when it conforms to the legislative intent or purpose of the statute.").

Turning to the question of whether the City may deduct collection fees from sales and use taxes levied on behalf of the OPSB, the City cites the 1982 agreement and authority provided by La. R.S. 47:338.107.  In opposition to the City's contentions, the OPSB argues, *inter alia*, that the 1982 agreement violates La. Const. art. VII, §14 (A), which states, in pertinent part, that "the funds, credit,

property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private." It argues that, because Louisiana's Constitution already obligates the City to collect OPSB's sales and use taxes, any payment by the OPSB for collection services is an "unconstitutional donation to the City."[11]

The City relies on Subpart C of La. R.S. 47:338.107, which provides, in pertinent part, that the OPSB "shall have the right to contract with the city of New Orleans, the State Department of Revenue, or any other public agency authorized to collect a sales and use tax for the collection of the said additional sales tax jointly with the sales and use tax of such other agency." Like the other taxes, this tax "shall be collected at the same time and in the same manner . . . or in such other manner as may be set forth by the Orleans Parish School Board in the ordinance or resolution imposing said tax."

Notably, the statute is silent on the issue of whether a collection fee may be assessed against the OPSB. Other statutes authorizing the collection of various taxes, specifically allow for the payment of collection fees; thus, the failure of La. R.S. 47:338.107 to provide for the payment of collection fees can only be seen as deliberate.[12]

---

[11] The OPSB also argues that, although La. Const. art. VII, §14 (C), which allows "the state and its political subdivisions or political corporations [to] engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual," here, the OPSB received nothing of equal value (insofar as the City was already obligated to collect the sales and use taxes), that the 1982 agreement was not entered into in compliance with the City Charter or Code, or, in the alternative, "had a life span of one (1) year." Because we find that the collection fees are impermissible on other grounds, we need not address these arguments.

[12] *See, for example,* La. R.S. 47:338.221, which authorizes the City to collect an occupancy tax for short-term rentals, provides in subpart C that the "governing authority may enter into a contract with any public entity authorized to collect sales or use taxes, under such terms and conditions as it may deem appropriate, *including payment of a reasonable collection fee*, for the collection of the occupancy tax authorized by this Section" (Emphasis added); La. R.S. 47:338.209, which authorizes a dedicated hotel occupancy tax in Natchitoches, provides in

22

Likewise, the City cites no ordinance or resolution authorizing the collection of the taxes in a manner which differs from the collection of any other taxes. As such, these sales and use taxes are to be collected "in the same manner" as other OPSB taxes.

Moreover, as we have already determined, the sales and use taxes levied on behalf of the OPSB are dedicated taxes. La. R.S. 47:338.84 is dedicated to teachers' salaries and/or school operation. La. R.S. 47:338.107 is dedicated to additional funds for teachers' and other personnel salaries, or for maintaining/operating schools, or for the capital improvements of the public school system. The failure of the Legislature to allow for the payment of collection fees for these taxes, in our view, reflects the intent that *all* tax proceeds be directed to the OPSB.

As we have further found, the Louisiana Supreme Court has clearly established in the *La. Assessors* case, quoting *Ziemer v. City of New Orleans*, 195 La. 1054, 1067, 197 So.754, 759 (1940), that "[w]here [tax] funds are dedicated to a certain purpose they cannot be intermingled with other funds and used indiscriminately, but must be applied as dedicated." *La. Assessors*, 05-2548, p. 15, 986 So.2d at 14. Likewise, as we have noted, a dedicated tax, dedicated for a specific purpose, is to be used for that purpose alone. *Downtown Dev. Dist.*, p. 22,

---

subpart C that "the governing authority may enter into a contract under such terms and conditions as it deems appropriate, *including payment of a reasonable collection fee*, with any public entity authorized to collect sales or use taxes for the collection of the hotel occupancy tax authorized hereby." (Emphasis added); La. R.S. 33:4709.1, a statute which creates the Vidalia Riverfront Development District and authorizes it to levy a hotel occupancy tax to provide funds for a convention center in the town, expressly provides in subpart J(5) that the "district, through the authority, may enter into a contract under such terms and conditions as it may deem appropriate, *including payment of a reasonable collection fee*, with any public entity authorized to collect sales or use taxes for the collection of the hotel occupancy tax authorized in this Section." (Emphasis added).

272 So.3d at 933, citing *La. Assessors*, 05-2548, p. 18, 986 So.2d at 16. As the *Downtown Dev. Dist.* case found that the City could not divert the DDD taxes for purposes other than their dedicated purposes and use them to fund retirement systems, its rationale is equally applicable here. The withholding of funds from dedicated taxes as collection fees is equivalent to the diversion of those funds for purposes other than their dedicated uses, which cannot be countenanced.

The reasoning of the (1943) *Orleans Par. Sch. Bd.* case is equally applicable here – the City has the necessary resources and collects taxes, whereas the OPSB has no tax collection powers, and the collection of the sales and use taxes imposes no hardship or additional costs on the City. Notably, La. R.S. 47:338.107 C allows the OPSB to contract with entities already charged with the duty of collecting of taxes (*i.e.*, the City, "the State Department of Revenue, or any other public agency authorized to collect a sales and use tax") and contemplates the collection of those taxes "jointly" with the entity's own sales and use tax collection. It imposes no additional burden on the City in collecting the taxes it is already statutorily required to collect. We therefore conclude that the City may not withhold any portion of the sales and use taxes as fees for the collection of those taxes.

### *Mandamus*

"A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. . . ." La. C.C.P. art. 3862. La. C.C.P. art. 3863 then provides that "[a] writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law." A "'ministerial duty' is one in which no element of discretion is left to the public officer, in other words, a simple, definite duty, arising under conditions admitted or proved to exist, and

24

imposed by law.'" *Constr. Diva*, 16-0566, pp. 12-13 , 206 So.3d at 1037 (quoting *Landis Const. Co., LLC v. Reg'l Transit Auth.*, 15-0854, p. 10 (La. App. 4 Cir. 5/25/16), 195 So.3d 598, 605).  La. C.C.P. art. 3865 indicates that, when a petition for a writ of mandamus is filed, "the court shall order the issuance of an alternative writ directing the defendant to perform the act demanded or to show cause to the contrary."[13]

The denial of a request for a mandamus is an appealable judgment.  *Constr. Diva*, pp. 2-3, 206 So.3d at 1032.  It is to be reviewed on appeal under a manifest error standard of review.  *Id.*, p. 13, 206 So.3d at 1037 ("[w]e review a trial court's decision to deny a request for a writ of mandamus under an abuse of discretion standard.").  "An appellate court will grant a writ of mandamus only when there is a . . . clear abuse of discretion." *Id.*, pp. 13-14, 206 So.3d at 1037.  (Citation omitted).

The issue of whether a mandamus is appropriate under the circumstances presented by this case was addressed by the *Downtown Dev. Dist.* Court.  Like the DDD in that case, the OPSB here argues that the requirement that it proceed through ordinary process may cause the injustice that it may have "to wait *20 years* to *maybe* collect on a judgment."  (Emphases in original).  It further argues that the trial court did not properly perform an analysis of this issue.

This argument was rejected by the *Downtown Dev. Dist.* Court, which found no abuse of the trial court's discretion in denying the request for a writ of mandamus.  It held that that "the DDD failed to meet its burden to show that a

---

[13] While the City has argued that the trial court correctly denied the request for a writ of mandamus, it has not raised the issue of whether the mandamus procedure, as opposed to an ordinary proceeding, is proper.

25

delay in obtaining ordinary relief would cause injustice sufficient to warrant the issuance of a writ of mandamus." *Downtown Dev. Dist.*, p. 28, 272 So.3d at 936.

We see no measurable difference between the facts of the *Downtown Dev. Dist.* case and those of the instant matter, as concerns the issue of the writ of mandamus. We therefore adopt that finding here; we find no abuse of the trial court's discretion in refusing to grant the writ of mandamus.

### The City's exception of no cause of action

In its fourth assignment of error, the OPSB contends that "[t]he trial court committed legal error in granting-in-part [the City's] Exception of No Cause of Action." However, other than generally stating that the "[t]rial Court's ruling[] as to . . . Appellee's Exception of No Cause of Action [was] defective for a variety of reasons" and providing the standard of review to be applied by an appellate court in evaluating the grant or denial of an exception of no cause of action, the OPSB makes no argument with respect to the trial court's partial grant of the City's exception.[14] We ordinarily do not address assignments of error for which no argument is made, as they are deemed abandoned. *See*, *e.g.*, *Daniel v. Clarion Inn & Suites*, 16-0760, p. 2 (La. App. 4 Cir. 2/22/17), 214 So.3d 38, 40; *Countrywide Home Loans Servicing, LP v. Thomas*, 12-1304, p. 3 (La. App. 4 Cir. 3/20/13), 113 So.3d 355, 357.

In the instant matter, however, we find that the trial court's judgment, granting in part, and deferring in part, the City's exception of no cause of action, is not a final, appealable judgment and we decline to exercise our supervisory jurisdiction to address it.

---

[14] We note, too, that the City made no specific argument that the trial court was correct in partially granting the exception of no cause of action.

26

First, the judgment fails to contain sufficient decretal language so as to render it a final, appealable judgment. "A final judgment is one that determines the merits in whole or in part and is identified as such by appropriate language." *Moon v. City of New Orleans*, 15-1092, pp. 5-6 (La. App. 4 Cir. 3/16/16), 190 So.3d 422, 425 (citing La. C.C.P. arts. 1841, 1918). "A final appealable judgment must contain decretal language, and it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied." *Id.*, p. 6, 190 So.3d at 425. (Internal citation omitted). "The specific relief granted should be determinable from the judgment without reference to an extrinsic source such as pleadings or reasons for judgment." *Id.* (Internal citation omitted). These principles apply to a judgment granting an exception of no cause of action. *See*, *e.g.*, *McLellan v. Yenni*, 19-0169 (La. App. 5 Cir. 9/18/19), 279 So.3d 1053, 1057 (judgment granting exception of no cause of action "create[d] ambiguity in identifying which claims of . . . Plaintiff fail to state a cause of action," and failed to state the relief granted; thus judgment lacked sufficient decretal language to be final); *Johnson v. Mount Pilgrim Baptist Church*, 05-0337, p. 2 (La. App. 1 Cir. 3/24/06), 934 So.2d 66, 67 (where judgment simply granted an exception of no cause of action "for the reasons provided orally in open court," judgment did not contain decretal language and was, thus, defective).

In the instant matter, the trial court's judgment simply states: "Defendants' Exception of No Cause of Action is **GRANTED IN PART AND DEFERRED IN PART**." This judgment does not state which of the OPSB's claims fail to state a cause of action. Likewise, it can only be clarified by resorting to extrinsic sources, such as the trial court's reasons for judgment. On this basis, alone, the judgment is not a final, appealable judgment.

27

Second, our jurisprudence clearly reflects that "[p]artial judgments on exceptions of no cause of action are prohibited unless there are two or more distinct causes of action." *Simmons v. Templeton*, 99-1978, p. 4 (La. App. 4 Cir. 4/12/00), 762 So.2d 63, 66. "A cause of action is interpreted to mean the operative facts that give rise to the plaintiff's right to assert his action." *Id.* As recently explained by the First Circuit, "the exception of no cause of action should not be maintained in part, so as to prevent a multiplicity of appeals thereby forcing an appellate court to consider the merits of the action in a piecemeal fashion." *State, by & through Caldwell v. Astra Zeneca AB*, 16-1073, p. 5 (La. App. 1 Cir. 4/11/18), 249 So.3d 38, 42, *writ denied*, 18-00766 (La. 9/21/18), 252 So.3d 899, and *writ denied sub nom. State by & through Caldwell v. AstraZeneca AB*, 18-0758 (La. 9/21/18), 252 So.3d 904 (citing *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So.2d 1234, 1236 (La. 1993)). "If there are two or more items of damages or theories of recovery that arise out of the operative facts of a single transaction or occurrence, a partial judgment on an exception of no cause of action should not be rendered to dismiss an item of damages or theory of recovery." *Caldwell,* 16-1073, p. 5, 249 So.3d at 1239.

We recognize that, when confronted with a judgment that is not appealable because it lacks decretal language, an appellate court may convert the appeal to an application for a supervisory writ of review. *See Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll. v. Mid City Holdings, L.L.C.,* 14-0506, p. 2-3 (La. App. 4 Cir. 10/15/14), 151 So.3d 908, 910. However, as this Court has recognized, "appellate courts will refrain from the exercise of their supervisory jurisdiction when an adequate remedy exists by appeal." *Urquhart v. Spencer*, 15-1354, p. 5 (La. App. 4 Cir. 12/1/16), 204 So.3d 1074, 1078. As we found in *Urquhart*, "[i]n

28

this instance, an adequate remedy by appeal will exist upon the entry of a precise, definite, and certain judgment containing the decretal language necessary for our appellate review." *Id.* We therefore decline to exercise our supervisory jurisdiction and convert this portion of the appeal to an application for supervisory writs.

### *The City's Answer to Appeal – Denial of Improper Use of Summary Proceedings and Improper Cumulation of Actions*

In its Answer to the appeal, the City raises the issue of the trial court's denial of its dilatory exceptions of improper use of summary proceedings and improper cumulation of actions.[15] In its Reasons for Judgment, the trial court indicated that its denial of these exceptions was based on the following:

> As it relates to the exception of Improper Use of Summary Proceedings and Improper Cumulation of Actions, Defendants essentially base their argument on the flawed premise that Plaintiff has sought to blend summary and ordinary proceedings. For example, in support of their exception alleging improper use of summary proceeding, Defendants state, "OPSB is seeking, in addition to a writ of mandamus, a declaratory judgment, preliminary and permanent injunction, and damages all in the same proceeding." Likewise, to support their contention that Plaintiff has improperly cumulated actions, Defendants assert that "[i]n combining claims for mandamus, declaratory judgment, injunctive relief, and damages, that OPSB has improperly cumulated actions."
>
> "It is well settled that even the most inconsistent causes of action can be claimed in the same petition if pleaded in the alternative." <u>Florida Molasses Co. v. Beruer</u> 220 La. 31, 42-43; 55 So.2d 771, 775 (1951). Here, Defendants have mischaracterized the structure of Plaintiff s claims. However, because Plaintiff's requests for declaratory judgment and damages are only applicable in the alternative should mandamus and

---

[15] We note that "[i]nterlocutory judgments rendered during the progression of a suit may be reviewed in the appeal of the final judgment in the suit." *Devers v. S. Univ.*, 97-0259, p. 15 (La. App. 1 Cir. 4/8/98), 712 So.2d 199, 209.

> injunction be denied; and both *mandamus* and injunction employ summary procedure, the exceptions must be summarily denied.

(Emphasis in original, footnotes omitted).

A review of the OPSB's Petition reflects that the trial court was correct that the OPSB sought a declaratory judgment and damages, in the alternative, should its other claims for a mandamus and/or an injunction be denied. In its prayer for relief, the requests for declaratory judgments are preceded with "[a]lternatively" and "[f]urther alternatively," and its demand for an award of damages is likewise "[f]urther in the alternative."

A trial court's judgment regarding a dilatory exception, like an exception of improper use of a summary proceeding or an exception of improper cumulation of actions, is reviewed on a manifest-error standard. *See*, *e.g.*, *Element Pictures, L.L.C. v. LIFT (Louisiana Inst. of Film Tech.), L.L.C.*, 18-0054, p. 3 (La. App. 4 Cir. 4/6/18), --- So.3d ----,----, 2018 WL 1663284, *writ denied*, 18-0724 (La. 9/14/18), 252 So.3d 487; *Miguel v. GEICO Gen. Ins. Co.*, 16-0596, p. 3 (La. App. 4 Cir. 12/21/16), 207 So.3d 507, 509; *Port City Glass & Paint Inc. v. Simmie Brooks*, 52,534, p. 8 (La. App. 2 Cir. 2/27/19), 266 So.3d 516, 522; *Alonzo v. Cain*, 14-0172, p. 4 (La. App. 1 Cir. 9/19/14), 154 So.3d 551, 553; *Judson v. Davis*, 04-1699, p. 9 (La. App. 1 Cir. 6/29/05), 916 So.2d 1106, 1113.

In the instant matter, we find no manifest error in the trial court's denial of the City's exceptions. In the (1959) *Orleans Par. Sch. Bd.* case, the City raised similar objections to the cumulation of the OPSB's actions; in overruling the exception, the Court found that the "demands are neither contrary to nor do they preclude each other." 116 So.2d at 508. See also *Abadie v. Cassidy*, 581 So.2d 657, 657-58 (La. 1991)("the two cumulated actions are the claim for damages and

the claim for injunctive relief. The principal demand for a permanent injunction is determined on its merits only after a full trial under ordinary process. . . . Thus, both of the actions sought to be cumulated in the present case are triable by ordinary process and thus employ the same 'form' of procedure."). On this basis, we do not find any manifest error in the trial court's ruling.

**CONCLUSION**

For the reasons set forth herein, we find that the trial court erred in denying the OPSB's request for a preliminary injunction. We therefore reverse that portion of the judgment and find that all proceeds of taxes collected by the City for the OPSB are to be paid to the OPSB, without any deductions or withholdings. We likewise find that the trial court erred in its partial grant of the City's exception of no cause of action and we vacate that portion of the judgment. We do not, however, find any error in the trial court's denial of a request for a writ of mandamus or in its denial of the City's exceptions and we affirm those rulings. This matter is hereby remanded to the trial court for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART,
VACATED IN PART, AND REMANDED**